550 A.2d 199

Kathleen JACKMAN, Appellant,

v.

Anthony D. PELUSI.

Superior Court of Pennsylvania.

Argued May 11, 1988.

Filed Sept. 21, 1988.

Reargument Denied Nov. 16, 1988.

364

David H. Moskowitz, Wayne, for appellant.

David S. Kaplan, Pottstown, for appellee.

Before MONTEMURO, TAMILIA and JOHNSON, JJ.

JOHNSON, Judge:

This is an appeal from an order reducing child support arrearages. We reverse and remand.

Following the parties' divorce, Kathleen Jackman, [Wife] gained custody of their four children. A support order was entered on May 25, 1967 in the Court of Common Pleas of Delaware County and was increased by order dated December 14, 1973 to the amount of $80.00 per week, twenty dollars a week per child. Anthony Pelusi [Husband] paid no child support after entry of this order. By August 1974 arrearages amounted to $2,495.00. Husband never petitioned for modification of the support order. Throughout 1974 Wife applied to the courts to obtain enforcement of the support order until she could no longer afford legal fees. Bench warrants were issued without effect and apparently were never enforced as arrearages continued to accrue. The Delaware County court placed the case on inactive status in 1976. In 1985 some of the children sought out Husband and resumed contact with him. Husband paid their college tuition, paid for airline tickets to his home and bought cars for them.

On February 3, 1986 Wife transferred the Delaware County support order to Chester County, Husband's county of residence, by means of an inter-county order of registration. The arrearages on the order certified from Delaware County inclusive through December 27, 1985, totalled $46,-015.00.

Husband filed a petition to terminate the order and remit arrearages. Following a hearing, the Hearing Officer recommended that arrearages be modified to $29,257.66 based upon the fact that arrearages should not have accrued after each child's eighteenth birthday, when each child became independent. Both parties filed exceptions to the Hearing Officer's recommendations. By opinion and order of Octo-

ber 27, 1987 the Honorable Alexander Endy further reduced the arrearages to $4,895.00. This appeal followed.

Wife argues that the trial court incorrectly and unfairly evaluated the factors that determined its reduction of the Hearing Officer's recommendation for arrearages. After reviewing and accepting the Hearing Officer's determination for existence and amount of arrearages through December 27, 1985, the trial court wrote:

It seems to me that imposing the full liability on [Husband] at this time is punitive in light of all that has transpired. [Wife] should not be unjustly enriched by [Husband's] present ability to pay an obligation fixed by agreement of the parties fourteen years ago and disregarded by both parties for almost ten years, without regard to intervening circumstances.

Opinion, 10/27/87, at 9. The trial court then decided that, based on these "cognizable equities," Husband's obligation should terminate on March 21, 1975, the date Wife filed the petition for name change, the "final affirmative action" by Wife. Opinion, 10/27/87 at 10.

On appeal, a child support order will not be disturbed absent an abuse of discretion, either by a misapplication of law or by an unreasonable exercise in judgment. *Scheidemantle v. Senka*, 371 Pa.Super. 500, 538 A.2d 552 (1988). An abuse of discretion:

does not necessarily imply a willful abuse, but if, in reaching a conclusion ... the judgment exercised is manifestly unreasonable as shown by the evidence or the record, discretion is then abused and it is the duty of the appellate court to correct the error.

*Hartley v. Hartley*, 364 Pa.Super. 430, 436, 528 A.2d 233, 236 (1987). A finding of abuse of discretion is not made lightly but must rest on clear and convincing evidence; the trial court must be affirmed on any valid ground. *Lyday v. Lyday*, 360 Pa.Super. 16, 519 A.2d 967 (1986).

■ We find that the trial court abused its discretion in reducing the Hearing Officer's determination of arrearages. After review of the entire record, we find that the Hearing

Officer correctly reduced the certified amount of arrearages to $29,257.66 because each child became independent after his eighteenth birthday. The trial court's further reduction of this amount to $4,895.00 was unwarranted. Husband did not raise, nor did the trial court consider, the propriety of the support orders upon which arrearages accrued. Indeed, while Husband testified that he was in debt during this period, he made no attempt to prove that the alleged debt made it impossible for him to meet his support obligation. Thus, the situation in which this Court has, on occasion, reduced or remitted arrearages in child support cases when there had been a substantial change in the obligor's circumstances does not apply to the present case. *See Commonwealth ex rel. Cochran v. Cochran,* 339 Pa.Super. 602, 489 A.2d 804 (1985). For instance, in *Commonwealth v. Vogelsong,* 311 Pa.Super. 507, 457 A.2d 1297 (1983), this Court remitted arrearages because, shortly after the original support order was issued, the husband became permanently and totally disabled by heart disease and diabetes. We held that remittance of arrearages was the only equitable solution, especially considering the fact that the unmodified support order was greater than the husband's entire social security payment, his only source of income.

In the present case, however, the trial court remitted arrearages solely based upon its finding that Wife was at fault for not having the support order enforced and that therefore laches should preclude her from collecting the accrued arrearages. The court's determination was manifestly unreasonable on two grounds. First, Husband does not sustain his burden required by the test for application of laches. Second, the trial court based its conclusion on incorrect assumptions. The facts of this case do not support the trial court's conclusion that Wife's fault rises to a level that terminates her rights.

Courts have been extremely cautious in applying the doctrine of laches to situations like the one before us in which a child support order has not been enforced, even when long periods of time are involved. *See* Annotation, *Laches or Acquiesence as Defense, So As To Bar Recovery*

*of Arrearages of Permanent Alimony or Child Support,* 5
A.L.R. 4th 1015 (1981). There is ample evidence that a
large proportion of child support awards are not paid or not
paid in full and on time. H.H. Clark, Jr., The Law of
Domestic Relations in the United States, Vol. 2, § 18.3 at
380 (1987). A 1983 Census Bureau study established that
of the 5,000,000 child support orders issued that year, only
one-half received full payments, one-fourth received partial
payments and one-fourth received no payment at all.
Creech, *Survey of Developments in North Carolina Law,
1986: Domestic Law: Legislating Responsibility: North
Carolina's New Child Support Enforcement Acts,* 65
North Carolina L.R. 1354, 1357 n. 3 (1986). That is, 1.25
million orders were not enforced at all. This evidence, in
strongly suggesting a problem endemic to the system of
support enforcement, argues against the legitimacy of
blaming the individual custodial parent for failure to en-
force the orders. Clark points out that lack of funds for
legal counsel is a major cause of this failure. If, as in the
present case, the custodial parent obtains counsel whose
efforts do not effect enforcement, we must question wheth-
er the law requires her to repeat costly and futile gestures;
the law does not require a futile act.

In response to this situation, courts have either tempered
the doctrine of laches or have barred its use completely.
*See* Annotation, *Laches as Defense, supra* p. 202. General-
ly, the doctrine of laches is applied according to the follow-
ing test:

> The party asserting laches must show, first, a delay
> arising from the other party's failure to exercise due
> diligence, and second, prejudice from the delay. ... It is
> not enough to show delay arising from failure to exercise
> due diligence; for "laches will not be imputed where no
> injury has resulted to the other party by reason of the
> delay."

*Kehoe v. Gilroy,* 320 Pa.Super. 206, 212, 467 A.2d 1, 4
(1983) (quoting *Brodt v. Brown,* 404 Pa. 391, 394, 172 A.2d
152, 154 (1961)) (other citations omitted). The Pennsylvania
Supreme Court has established, when applying the eq-

uitable remedy of laches, that whether the elements of laches exist is a factual question to be answered in examining the circumstances of each particular case. *Leedom v. Thomas*, 473 Pa. 193, 373 A.2d 1329 (1977).

Application of laches in the present case, then, first depends on whether the delay in enforcement of the order was caused by Wife's failure to exercise due diligence. Courts in other jurisdictions have found due diligence even when a long delay in enforcement had occurred. For instance, in *Thurn v. Thurn*, 310 N.W.2d 539 (Iowa App. 1981), the court held that laches could not apply when, although the wife did not attempt to enforce her support order for 22 years, she did not do so because she was aware of the bad state of her former husband's finances. The court held that her delay in asserting her rights was reasonable under these circumstances. Further, delay alone, no matter for how long, does not itself establish laches. *Kehoe, supra*. The record discloses Husband's failure to prove lack of due diligence on Wife's part.

Husband claims that he did not make the support payments because he was in debt. Wife was aware of Husband's financial situation. Wife could have concluded that to further pursue Husband would be futile. That Wife's renewal of her enforcement efforts coincide with Husband's new financial stability as demonstrated by his substantial gifts to the children supports this construction of the facts. Further, we must recognize that the record before us is from Chester and not Delaware County; we cannot determine whether Wife had contact, formal or informal, with the domestic relations section in Delaware County during the years in question. Regardless, Husband makes no attempt to prove, aside from reciting the bare fact that the order remained unenforced, that non-enforcement of the order arose from any lack of due diligence or unreasonableness on Wife's part.

Second, Husband fails to discharge his burden of proving that he was prejudiced by the delay in enforcement of the order. Prejudice is an essential element of laches; in the absence of prejudice to the party asserting laches, the

doctrine will not be applied. *Kehoe, supra.* In fact, if Husband is in more stable financial condition now than he had been in the past, the delay worked in his favor. Further, Husband has had the advantage of the time value of the money he should have paid out in child support over the nine and one-half-year period.

■ Husband claims that he ceased making support payments because he relied on Wife's changing of the children's names as an indication that his support obligations had terminated. As authority he cites *Commonwealth ex rel. Crane v. Rosenberger,* 212 Pa.Super. 144, 239 A.2d 810 (1968). In *Rosenberger* this Court held that the husband's reliance on a letter from the court, telling him that if he were denied his visitation rights that he would no longer be obligated to pay support, was reasonable. The trial court in the present case found that the notice of name-change gave Husband reason to believe that his support obligations were terminated:

> [Husband] was under an honest, though perhaps mistaken, belief that this action on the part of [Wife] terminated his support obligation, which, added to the lack of visitation with his children since 1974 or 1975 and the financial difficulties which he was apparently experiencing explains, even if it does not excuse, his failure to contest.[1]

Opinion of 10/27/87 at 7. We do not agree. A notice of name change, unlike a letter from the court specifically regarding support obligations, cannot be reasonably construed as notice of termination of support obligations. Wife did not remarry; no third person assumed responsibility for the children. Wife merely changed the children's names (and her own name) to her maiden name. We find that it was manifestly unreasonable for the trial court to credit Husband with proper behavior for believing that his support obligation to his four children was terminated simply because Wife changed the children's names.

Therefore, even if a rationale exists for remitting some of the arrearages, (and we believe it does not), the date chosen

---

1. Nothing in the record indicates that either party was at fault for this "lack of visitation."

by the trial court, March 21, 1975, the date upon which the children's names were changed, is a manifestly unreasonable date upon which to stop the calculation of arrearages. Wife's claim for the support was still valid on that date, merely months after the order had been issued.

The trial court's second error arose from its adopting erroneous conclusions that work an injustice in its purportedly equitable solution. First, the trial court states that the support obligation was by "agreement of the parties." This is incorrect. The support obligation was created by order of court. This distinction between a support order and a support agreement is material to this case. A support order is a creation of statute and is enforceable by operation of law, while a support agreement is a contract governed by contract law in which the court has no involvement. *Hollman v. Hollman*, 347 Pa.Super. 289, 500 A.2d 837 (1985) (en banc), *rev'd on other grounds*, 515 Pa. 288, 528 A.2d 146 (1987).[2] The trial court is therefore incorrect in assuming that Wife had the primary obligation, as she would have under contract law, to enforce her rights.

After Wife initiated the enforcement, it was the province of the court to enforce the support order:

A support or alimony order is a creation of statute and an incident of the marriage which is enforceable by operation of law. *Commonwealth ex rel. Smith v. Smith*, 260 Pa.Super. 203, 393 A.2d 1224 (1978). ... [T]he legislature

**2.** The question before the supreme court in *Hollman* was whether pension benefits are exempt from attachment pursuant to 42 Pa.C.S. § 8124(b)(1)(vii) (pensions are exempt from attachment by a judgment creditor when the pension plan provides that the pension shall not be assignable) by a former wife to satisfy arrearages in support payments when the payments are based upon a support agreement. *Hollman v. Hollman*, 515 Pa. at 589–90, 528 A.2d at 147. The supreme court reversed this Court's holding that a former husband's pension fund could be attached pursuant to an order for support but not pursuant to a judgment based on a separation agreement. The supreme court wrote that this particular application of the distinction between support agreements and support orders elevated form over substance when the question was whether the wife was entitled to attach a pension which accrued over the course of the husband and wife's long marriage.

has extended the [power] to bring about compliance by granting courts the right to attach property and wages and to incarcerate willfully delinquent obligors ... [and] provides that the court will have domestic relations sections and personnel to receive, disburse and monitor payments ... Thus, upon analysis, it is apparent that extraordinary attributes and conditions are attached to support and alimony orders, which become instruments of the court, and not subject to the control of the parties. *Hollman v. Hollman,* 347 Pa.Super. at 299, 500 A.2d at 842. Second, if Wife did not have the primary responsibility, as she would with a support *agreement,* to enforce the order, it cannot be said that she slept on her rights when enforcement was not achieved. As was discussed above, a system-wide, endemic problem with enforcing support orders cannot be laid at Wife's feet. By initiating the enforcement of support action and in following it through as far as her finances would allow, Wife acted with the reasonable diligence required by courts of equity. *See Snyder v. Queen Cutlery Co.,* 357 Pa.Super. 456, 516 A.2d 71 (1986); *Kehoe, supra.* Her action put Husband on notice and nothing Wife subsequently did should have led Husband to believe that Wife had abandoned her rights. *Id.*

 The trial court itself characterizes Husband's request to be for equitable relief and its remedy as an equitable one. However, the principles of equity do not allow Husband, with unclean hands, to seek equity. The doctrine of unclean hands applies when the wrongdoing directly affects the relationship between the parties and is directly connected with the matter in controversy. *In re Estate of Pedrick,* 505 Pa. 530, 482 A.2d 215 (1984). As the issue presented to this Court centers on Husband's misconduct, his non-payment of support, the doctrine applies in this case. Although Wife did not expressly present Husband's conduct in terms of unclean hands, we may raise the doctrine *sua sponte,* as the doctrine is implicated when the party's conduct shocks the moral sensibilities of the court; it has nothing to do with the rights or liabilities of the parties. *Id; Gaudiosi v. Mellon,* 269 F.2d 873 (3d Cir.1959).

Husband failed, over a period of years, to pay court-ordered child support for his four children. He never sought modification of the order. Although he was in debt, he held the same job throughout the period in question, a point that he in fact emphasized. Wife's inability to have the order enforced cannot absolve him. *See Nucci v. Nucci,* 355 Pa.Super. 549, 513 A.2d 1059 (1986). Husband essentially argues that because he has escaped paying support for all this time and because his children are now self-supporting adults, he should be retroactively absolved of his responsibility. With this we cannot agree.

We find the trial court's statement that Wife would be unjustly enriched were she to receive the arrearages inappropriate. Wife would not be unjustly enriched; she would simply collect the funds awarded to her by previous courts for money she has already spent in raising their four children. That such arrearages reimburses the custodial parent for money spent for the children and is thus money for the children has been made clear by our supreme court in *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984). Husband's present ability to pay should be reason to enforce the arrearages, not, as the trial court says, to remit them. The trial court wrote:

> We have nothing in the record as to how the children were supported during the almost ten year hiatus during which [Wife] was remarried and divorced and lived with her parents for some time.[3]

Opinion, 10/27/87 at 9. The court implies that Wife has a burden of proving her expenditures on the children's behalf before she is entitled to arrearages. Wife has already made her case for the childrens' needs in the original support hearing. The law does not require her to prove her case yet again. Further, the trial court's conclusion flies against common sense. We *do* know that Husband has not supported the children.

The trial court did not expressly take into account Husband's gifts to his children, the tuition, airline

3. Wife was remarried for less than a year.

tickets and cars, given by Husband after the children resumed contact with him. These payments totaled over $20,000. Husband argues that had the trial court given Husband credit for these expenditures, "such a result under the circumstances of the case before the trial court would not have been implausible," and that the trial court's decision as it now stands strikes a compromise. Appellee's brief at 13. The law of this Commonwealth does not allow this compromise. Payment for such items as cars and airline tickets do not satisfy the supporting parent's obligation of reasonable and necessary support and cannot therefore be credited to his arrearages. *Melzer, supra.* More important, a court could have found that the tuition payments were an *additional* support obligation. *See Miller v. Miller,* 353 Pa.Super. 194, 509 A.2d 402 (1986); *Fortune/Forsythe v. Fortune,* 352 Pa.Super. 547, 508 A.2d 1205 (1986). This additional obligation cannot be credited against Husband's obligation to supply necessities, and if the trial court had done so, it would have abused its discretion.

For these reasons we find that the trial court abused its discretion in modifying the recommendations of the hearing officer.

■■■■ The trial court correctly resolved Wife's remaining issues. Wife claims that she was entitled to reimbursement for various of the children's medical expenses from Husband. The trial court determined, and we agree, that the evidence she presented to document these expenses was entirely inadequate to establish the amount of these expenses. We agree as well with the trial court's denial of Wife's request for interest. Wife is not entitled to pre-judgment interest.

■■ Last, Wife submits that the Chester County Court erred in not accepting as final the amount of arrearages owed as certified to it by the Delaware County Domestic Relations Office. Wife is incorrect. Section 4540(a) of the Revised Uniform Reciprocal Enforcement of Support Act, titled Effect and Enforcement of Registered Order, establishes that:

[The registered order] has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a support order of this Commonwealth and may be enforced and satisfied in like manner.

23 Pa.C.S. § 4540(a). That this act applies if "both the obligee and the obligor are in this Commonwealth but in different counties" is established by 23 Pa.C.S. § 4533. The Hearing Officer correctly adjusted the order according to law because the children were not owed support beyond their eighteenth birthdays. The trial court did not abuse its discretion in resolving these issues.

Our resolution of this dispute is keyed to the facts of this particular case. A change in the law obviates the need to apply such an approach in the future. Until recently the law in this Commonwealth has been that a court may, at any time, remit, correct or reduce the amount of any arrearages. *Akers v. Akers*, 373 Pa.Super. 1, 540 A.2d 269 (1988). This came within the court's discretionary powers, mandating the court to consider all relevant factors in the exercise of its discretion. *Prescott v. Prescott*, 284 Pa.Super. 430, 426 A.2d 123 (1981). As Wife has raised supplementally, by Act of March 25, 1988, the legislature has removed this matter from the discretionary powers of the court by prohibiting retroactive modification of arrearages unless there is a pending petition for modification of support. The Act reads in pertinent part:

**(d) Retroactive modification of arrears.**—No court shall modify or remit any support obligation, on or after the date it is due, except with respect to any period during which there is pending a petition for modification. . . .

Amendments to Support Act, Act No. 1988–35, 1988 Pa.Legis.Serv. 198 (to be codified at 23 Pa.C.S. § 4352(d)). The legislature has further underscored this point by deleting the language "the court may at any time remit, correct or reduce the amount of arrearages" from former 23 Pa.C.S. § 4352(c) pertaining to foreign support orders. Amendments to Support Act, Act No. 1988–35, 1988 Pa.Legis.Serv.

200 (to be codified at 23 Pa.C.S. § 4352(e)). The legislature fashioned these amendments pursuant to the Child Support Enforcement Amendments of 1986, amendments to Title IV–D of the Social Security Act. Congress amended Title IV–D in 1986 to require, as a condition for continued state receipt of AFDC funds, that the states, among other requirements, must prohibit retroactive modification of arrearages. 42 U.S.C. § 666(a)(9).

Although these provisions were not effective at the time of issue of the 10/27/87 order from which this appeal was taken, they became effective as of 3/25/88. The Act provides that:

> The amendments affecting section 4352 shall apply to all support orders under which an arrearage exists on or is accrued after the effective date of this act.

Act of March 25, 1988 § 4 (to be codified at 23 Pa.C.S. § 4352 note). Because we now vacate that order, the Act will thus control subsequent action by the trial court.

We vacate the order appealed from and remand for the trial court to readjust the arrearages in a manner consistent with this opinion.

Order vacated. Case remanded. Jurisdiction relinquished.