639 A.2d 826

**Jeanette A. BULLOCK, Appellee,**

v.

**Franklin Hayes BULLOCK, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1994.

Filed March 31, 1994.

644

Bernard D. Cullen, Langhorne, for appellant.

Bernice J. Koplin, Philadelphia, for appellee.

Before KELLY, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

The defendant/appellant, Franklin Hayes Bullock, Jr., appeals the order of the Court of Common Pleas of Bucks

County directing the payment of arrearages for child and spousal support. We affirm.

The facts of record disclose that the defendant and plaintiff, Jeanette A. Bullock, were married on September 5, 1937, divorced on October 23, 1992, and three children were born of the marriage: Thackery (born June 21, 1940), Whitney (born September 14, 1942), and Paul (born January 2, 1957).

It appears that this dispute had its roots in the defendant's excessive gambling, which consumed his money and time, leaving very little of either for his family. As a consequence, the plaintiff secured a warrant for the defendant's arrest for "desertion and non-support", which resulted in his arrest (on December 17, 1958) and incarceration (until January 9, 1959). The release date coincided with the entry of a court order directing that the defendant pay $35.00 per week in spousal and child support. The plaintiff recalled that she and the defendant were present when a judge ordered payment. N.T. 5/13/93 at 43. However, no support was ever paid.

In fact, it was not until the parties' son (Paul) died on November 23, 1991, and the defendant sought appointment as administrator of the estate, that the plaintiff learned of the defendant's Florida residence. Thereafter, the plaintiff instituted suit by Petition for Contempt and the Payment of Arrearages [1] to collect support due over a period of 33 years,[2] plus interest, which was calculated to be $214,166.98.

Hearings were conducted on May 13 and June 11, 1993, at which time the defendant testified that he always gave money to his family, he was unaware that a support order had been entered, and his family always knew of his whereabouts during the 33-year hiatus. In contrast, the plaintiff recounted that, following release from jail, hostility was exhibited by the defendant, he continued gambling and provided no support to

1. At the time of the filing, the plaintiff and defendant were each 76 years of age.

2. The reasons given by the plaintiff for delaying enforcement of the support order were two-fold: 1) she did not know of the defendant's whereabouts; and 2) she "was unable to afford the significant legal fees needed to pursue" the defendant.

the family, leaving them to subsist on what her son (Whitney) was able to earn. Further, she received neither public assistance nor help from other family members during this time. N.T. 5/13/91 at 50.

The trial court, after hearing all of the testimony, directed that the defendant pay support; to-wit:

... Effective January 9, 1959 to September 13, 1960, defendant shall pay the sum of $35.00 per week for the support of his wife and two minor children, Whitney and Paul as per prior Order of Court; effective September 14, 1960 to January 1, 1975, defendant shall pay the sum of $30.00 per week for the support of his wife and one minor child, Paul. From January 2, 1975 until October 23, 1992, the date of divorce, defendant shall pay the sum of $25.00 spousal support. The Order is thereafter terminated. The Bucks County Domestic Relations Office is ORDERED and DIRECTED to calculate the arrears pursuant to the above allocation.

Defendant shall pay a lump sum in the amount of $10,-000.00 within 30 days, and thereafter shall pay the sum of $55.00 per week (arrears only) until the balance is paid in full.

■ This appeal followed and raises four issues for our consideration. The first questions whether the plaintiff is precluded, by virtue of the decree divorcing the parties in 1992, from prosecuting this action. We find she is not. *See Commonwealth ex rel. Smith v. Smith,* 260 Pa.Super. 203, 393 A.2d 1224, 1225, 1226 (1978), wherein we wrote:

The first question is whether appellee's right to recover the arrearages is affected by the fact that she and appellant have been divorced.

"The purpose of support is to provide a dependent spouse, with a reasonable living allowance. The obligation to provide support is imposed as an incident of the marital relationship which is conceived of as a unity. When that unity is severed the obligations incident to it cease." Accordingly, upon the divorce, appellant's obligation to support appellee

ceased. However, "[t]he duties, rights and claims accruing to [the husband] in pursuance of his marriage which ceased and determined [*sic*] with the decree of divorce, did not apply to his existing financial obligations that were legally fixed prior thereto." It is therefore clear that a court may compel compliance with a support order, including an order for the payment of arrearages, after the obligation of support has ceased, as long as the order was entered before the divorce. [Citations omitted]

Consistent with *Smith,* we hold that, albeit the defendant's spousal support obligations ceased upon divorce, the duties, rights and claims attendant to the marriage and accruing thereunder survived and are enforceable as a legally created duty. *Id.;* 23 Pa.C.S.A. § 3503.

The second issue alleges the bar of the doctrine of laches to the plaintiff's entitlement to delinquent support payments.

As stated by this Court in *Patten v. Vose,* 404 Pa.Super. 426, 590 A.2d 1307, 1309, 1310 (1991) (Citations omitted:

The test for applying the doctrine of laches has been stated as follows:

The party asserting laches must show, first, a delay arising from the other party's failure to exercise due diligence, and second, prejudice from the delay.... It is not enough to show delay arising from failure to exercise due diligence; for "laches will not be imputed where no injury has resulted to the other party by reason of the delay."

\*     \*     \*     \*     \*     \*

Laches requires not only a passage of time, but also a resultant prejudice to the party asserting the doctrine. Laches is based on "some change in the condition or relations of the parties which occurs during the period the complainant unreasonably failed to act."

The existence of laches is a factual issue to be decided according to the circumstances in each particular case. "[T]he burden of proof with respect to the doctrine [of

laches] is upon the party asserting the defense; in order to meet this burden, the party alleging the delay must demonstrate prejudice." "[D]elay alone, no matter how long, does not itself establish laches."

"Courts have been extremely cautious in applying the doctrine of laches to situations like the one before us in which a child support order has not been enforced, even when long periods of time are involved."

\* \* \* \* \* \*

"Prejudice is an essential element of laches; in the absence of prejudice to the party asserting laches, the doctrine will not be applied." [Citations omitted]

*Accord Commonwealth ex rel. Brendel v. Brendel*, 429 Pa.Super. 319, 632 A.2d 876, 879–880 (1993).

In the instant case, it was the defendant's testimony that the plaintiff and children knew of his whereabouts at all times, and he was unaware of the issuance of any support order.

The trial court, being in the best position to assess credibility, concluded that a court order had been effectuated and the defendant had made *no* payments during the life of the order, nor did he offer any evidence of "prejudice" essential to a defense of laches thus averting the enforcement efforts by the plaintiff.

The appellant's duty to provide support for his wife and children had been established by court order, and his failure to comply therewith was clearly established by judicial records. Under these circumstances, he cannot complain that enforcement was delayed. See *Patten,* supra (The passage of 23 years prior to seeking enforcement of a support order did not run afoul of the doctrine of laches).

Further, the appellant has been employed during the period that support is sought; he presently collects social security ($638 per month); and he is embarking on a new career as an "Amway" representative, estimated to provide him with in-

come ranging from $25,000 to $33,000 per year.[3] Thus, we find that the appellant has failed to demonstrate how he has been "prejudiced" (a change or condition in the relations of the parties during the time in question) triggering the doctrine of laches to bar the appellee's efforts to recover arrearages due under a prior court order. *Id.*

■ Next, the appellant avers that the statute of limitations (6 years) precludes the appellee from collecting some or all of the arrearages awarded by the trial court.

"It has long been held [that] the statute of limitations will not bar relief in actions between husband and wife...." *Horowitz v. Horowitz,* 411 Pa.Super. 21, 600 A.2d 982, 985 (1991) (Citations omitted). Applying this precept here, given that the parties were divorced on October 23, 1992, the plaintiff's filing of a Petition for Contempt and for Payment of Arrearages on January 4, 1993, falls within the statute of limitations for instituting a cause of action. See, e.g., 42 Pa.C.S.A. § 5527 (6 years). Therefore, the plaintiff was not foreclosed from initiating collection proceedings on overdue support payments.

■ *Moreover,* one must appreciate the substantial difference between a support obligation created by court order, *see Jackman v. Pelusi,* 379 Pa.Super. 361, 550 A.2d 199, 204 (1988), and support entitlements arising out of private contracts. *Id.* The former is the by-product of statute and enforceable by operation of law, whereas the latter is distinguishable therefrom as a obligation governed by contract law. *Hollman v. Hollman,* 347 Pa.Super. 289, 500 A.2d 837 (1985) (en banc), *rev'ed on other grounds,* 515 Pa. 288, 528 A.2d 146 (1987).

Consequently, the defendant's support requirements resulting from a court order rather than an agreement, the trial court had the primary responsibility to implement (by operation of law) the plaintiff's right to support pursuant to the 1959

3. The defendant also testified to caring for an elderly woman (in her 90s) in the Florida area. His remuneration for assisting her is free room and board.

650

order.  *Jackman, supra; Hollman,* supra.  Thus, the court did not act improperly in enforcing the appellee's support order.

■   Lastly, the appellant argues that he was denied due process at the time of the 1959 support hearing.  He premises this averment on his inability to recollect either being present or having representation at the hearing.

Our examination of the record, which the appellant stipulated to as accurate (*see* N.T. 5/13/93 at 31–32), indicates that the appellant was committed to the Bucks County Prison on December 17, 1958, and discharged on January 9, 1959, by order of court.  Further, the January 1959 Term of the Bucks County Court of Common Pleas documents a hearing being conducted on January 9, 1959, against the appellant for "desertion and non-support".  As a result, the appellant was directed to pay $35.00 per week toward the support of the plaintiff and his then two minor children.  Additionally, the appellant's presence at the hearing, held in open court, was corroborated by the plaintiff.  N.T. 5/13/93 at 43.

The trial court, again, as the arbiter of fact and credibility, heard the differing accounts of the appellant and appellee. And, based on the evidence and testimony proffered on the question of due process (*i.e.,* the appellant's absence from the 1959 support hearing), the trial court wrote:

> After hearing, we dismiss defendant's application for dismissal based on ... denial of due process.... [b]ased on the evidence presented at the hearing....

From our review, the trial court's determination that the appellant was not denied due process (either substantive or procedural) is supported by the record, and we will affirm the trial court's order in this regard.

Accordingly, having scrutinized all of the issues proffered by the appellant and finding none to warrant a reversal of the order appealed, we affirm.

Order affirmed.