838 A.2d 630

**Donna K. CHRISTIANSON, Appellee,**

v.

**Robert M. ELY, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 13, 2003.

Decided Dec. 17, 2003.

648

Brian L. Kerstetter, for Robert M. Ely.

Brian W. Ulmer, for Donna K. Christianson.

Before CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, LAMB, JJ.

## *OPINION*

Justice NEWMAN.

In this case, we determine the effective date for an award of child support, where a mother filed two Complaints, eleven years apart, against a father. Our answer will dictate the amount of arrearages that the father owes for support of his child. For the reasons that follow, we affirm the Order of the Superior Court, which held that the father's support obligation arises on the earlier date.

## *FACTS AND PROCEDURAL HISTORY*

Although this case has a lengthy and tortuous procedural history, the facts are undisputed.

On August 19, 1985, Tenaya Christianson (Tenaya) was born to Donna Christianson (Mother) and Bruce Christianson (Husband), who were then a married couple. Two years later, Mother left Husband, taking their three children, including Tenaya. On February 27, 1987, Mother sought child support from Husband for all three children. On March 30, 1987, although an Order for support was entered for the two other children, there was no disposition made as to Tenaya. Mother filed a Complaint for Support against Robert M. Ely (Ely) on July 8, 1988, in the Court of Common Pleas of Union County, on behalf of Tenaya. On November 10, 1988, the district attorney's office for Snyder County filed a petition to with-

draw and terminate the support action against Husband for Tenaya, alleging that Mother was claiming Ely rather than Husband was the father. An *ex parte* Order was filed without hearing, allowing Mother to withdraw the support Complaint without the issue of paternity having been decided.[1]

Ely objected to the Complaint that Mother filed on July 8, 1988, claiming that Tenaya was born to an intact marriage and that, as a result, the presumption of paternity applied. The trial court ordered Ely to submit to genetic testing. Ely appealed to the Superior Court, which held that Husband had not rebutted the presumption of paternity. *Christianson v. Ely*, 390 Pa.Super. 398, 568 A.2d 961, 966 (1990). The Superior Court vacated the Order of the trial court and remanded the matter to determine the actual relationship of the presumptive father (Husband) and Mother and to determine whether estoppel applied.

After remand, the Union County court did not hold a hearing. On August 19, 1992, former President Judge Wayne Bromfield (President Judge Bromfield) entered an Order remanding the support action to the Court of Common Pleas of Snyder County (trial court) for "final processing pursuant to the Pa. Rules of Civil Procedure." RR at 45I.[2] It appears that no "final processing" ever occurred. President Judge Bromfield remanded the case to Snyder County because that was the initiating jurisdiction of the support action and as a result of there having been no activity for several months. RR at 45I. Neither the Pennsylvania Rules of Civil Procedure nor the local rules define "final processing."

**1.** The facts regarding this March 30, 1987 Order and November 10, 1988 district attorney's petition are not included in the record before us. Rather, they were set forth in *Christianson v. Ely*, 390 Pa.Super. 398, 568 A.2d 961, 962 (1990), where the Superior Court noted "[t]hese facts are taken from the parties' briefs. We are unable to verify this information as the relevant case record is not before us." *Id.* at 962, FN3.

**2.** Union County and Snyder County constitute the 17th Judicial District. Each county has its own judge. However, both judges have jurisdiction over both counties.

Five years later, on September 9, 1997, Mother filed a second Complaint for Support against Ely in Snyder County at docket number 137–1997. The only evidence of record regarding these five years is an Order issued March 29, 1995 by Judge Woelfel of the Snyder County trial court, stating that Snyder County relinquished responsibility for collection and disbursement of support payments and that Union County would be responsible for their distribution and disbursement. RR at 2. This Order was docketed at 109–1988, the same number used for Mother's First Complaint against Ely (this docket number was subsequently changed to 88–9138 when it was certified to Union County). Ely filed Preliminary Objections raising the defenses of laches and estoppel. In his Brief in Support of Preliminary Objections, Ely argued that the presumption of paternity of Husband, who had not yet taken a paternity test, had not been overcome. Ely did not admit paternity, as he had won his appeal regarding the Order that he undergo genetic testing. Prior to the disposition of Preliminary Objections, on February 3, 1998, Mother executed a Petition to Withdraw and Terminate Action in Support, stating as her reason: "the first complaint is STILL OPEN i.e. NO NEED FOR TWO!" RR at 15. (emphasis in original). On February 18, 1998, the trial court issued an Order dismissing this Complaint for Support. Mother did not explain why she did not move forward on her first Complaint. However, the chronology of the case shows that although she was litigating against Husband and Ely since 1987 and 1988, respectively, it took until 1998 to obtain a determination that Husband was not the father and until 2000 to get Ely to acknowledge paternity. It appears that Mother did not pursue what she filed very vigorously, and when she did move forward, Ely resisted and dragged it out.

On July 14, 1998, Mother filed a second support action against Husband requesting support for Tenaya and their other two children. Following a hearing on June 10, 1999, the trial court found that the presumption of paternity was overcome and ordered the parties to appear for genetic testing. The testing showed that Husband was not the biological father

of Tenaya. As a result, the court dismissed the support action against him. Although it seems perplexing that the trial judge found the presumption of paternity was overcome before ordering genetic testing, the fact that Mother had filed previous support Complaints against Ely may well have lead the trial court to make a rational assumption that Husband's paternity was in question. The record does not include the June 10, 1999 hearing transcript, which lead to the trial court's Order for genetic testing.

On September 21, 1999, Mother filed a third Complaint for Support against Ely, which was docketed at 137–1997, even though the Complaint originally filed at that number had been withdrawn. Ely filed Preliminary Objections, asserting estoppel and laches, which the trial court denied on February 9, 2000. It issued an Order to appear for genetic testing and scheduled a bench trial to establish paternity. On September 22, 2000, Ely executed an Acknowledgement of Paternity/Waiver of Trial. The genetic testing was conducted on July 10, 2000 and resulted in a 99.91% probability of paternity for Ely. RR at 33A.

As a result of the genetic testing, Ely no longer denied paternity, and the parties proceeded to a support conference. The trial court issued a Temporary Order on September 22, 2000, which imposed on Ely a monthly obligation of $562.45 on behalf of Tenaya. The parties were unable to agree on the effective date of the support Order and, hence, the amount of the arrearages. Ely argued that the effective date should be September 21, 1999, the date when the third Complaint was filed against him, since it was this Complaint to which he stipulated paternity. Mother argued that the effective date should be July 8, 1988, when she filed her first Complaint for Support against Ely. Mother then filed a Motion to Determine Arrearages on October 19, 2000.

On December 21, 2000, the trial court issued its Opinion, finding that the duty of Ely to support Tenaya accrued at the time of her birth in 1985. It noted that the first Complaint against Ely was filed in 1988, and that Mother had not terminated or discontinued the 1988 action and Ely did not

seek entry of a judgment of non pros. No one sought to remove the 1988 Complaint, and the trial and Superior Court found that it remains open. Therefore, the courts determined that arrearages begin from 1988, since the Complaint is still open. As a result, the court found that "the equities lie with Tenaya and not Mr. Ely." Trial Court Opinion dated December 21, 2000 at 5. Pursuant to its Opinion, the court issued an Order on December 27, 2000, establishing that the effective date of Ely's support obligation was July 8, 1988.

In a Memorandum Opinion filed on November 8, 2001, the Superior Court affirmed the Order of the trial court and adopted its Opinion.

We granted a limited allowance of appeal to consider two issues: (1) whether a subsequent complaint nullifies a prior, unresolved support complaint in determining the effective date for support; and (2) whether arrearages may accrue against a putative father when the support action remains unresolved for fifteen years through no fault of the putative parent.

## DISCUSSION

This case has traveled a winding and bumpy road. It is less complicated to articulate the question it raises than it has been to recount its protracted history. What is the effective date of Ely's support obligation for Tenaya? Mother contends it is July 8, 1988, the date when she filed her first Complaint against him. Ely no longer objects to his duty to support Tenaya; rather, he argues that his obligation should accrue from September 21, 1999, the date when Mother filed her third Complaint against him, which resulted in his admitting paternity. For the reasons explained below, we affirm the Opinion of the Superior Court.

In our appellate review of child support matters, we use an abuse of discretion standard. *Bowser v. Blom*, 569 Pa. 609, 807 A.2d 830 (2002). "A support order will not be disturbed on appeal unless the trial court failed to consider properly the requirements of the Rules of Civil Procedure Governing Actions for Support, Pa.R.C.P.1910.1 *et seq.*, or

abused its discretion in applying these Rules." *Ball v. Minnick,* 538 Pa. 441, 648 A.2d 1192, 1196. (Pa.1994). (internal citations omitted). An abuse of discretion is "not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused." *Oeler v. Oeler,* 527 Pa. 532, 594 A.2d 649, 651 (quoting *In re Women's Homeopathic Hospital of Philadelphia,* 393 Pa. 313, 142 A.2d 292, 294 (1958)). This is a limited role and, absent a clear abuse of discretion, the appellate court will defer to the order of the trial court. *Commonwealth ex rel. Scanlon v. Scanlon,* 311 Pa.Super. 32, 457 A.2d 98, 101 (1983) (citing *Commonwealth ex rel. Vona v. Stickley,* 287 Pa.Super. 296, 430 A.2d 293 (1981)). "A finding of abuse is not lightly made but only upon a showing of clear and convincing evidence." *Scanlon* at 101–102 (quoting *Commonwealth ex rel. Caswell v. Caswell,* 280 Pa.Super. 359, 421 A.2d 762, 765, n. 6 (1980)).

To understand the disputed issue regarding the effective date, it is necessary to excavate the layers of Complaints that Mother filed and track them as they proceeded through the judicial system. For purposes of our determination, we need look only at her three Complaints against Ely.[3] Unfortunately, this task is complicated by ambiguous language in an earlier trial court Order and by subsequent confusion in assigning docket numbers.

The first Complaint involved in the dispute is the one that Mother filed against Ely on July 8, 1988. Despite the Superior Court order for remand in 1990 to determine Husband's paternity, a hearing was never held. To complicate the matter even further, on August 19, 1992, President Judge Bromfield entered the ambiguously worded Order remanding the support action for "final processing." The Pennsylvania Rules of Civil Procedure do not define this term, and each party

---

**3.** Mother filed a total of five Complaints for support: two were against Husband, to whom she was married when Tenaya was born, and three were against Ely. Genetic testing on July 10, 2000 revealed that Husband was not the father of Tenaya.

argues for its own meaning. Ely contends that the only "reasonable interpretation of the phrase ... is dismissal." Brief for Appellant at 10. Mother asserts that in this case, "final processing" does not mean dismissal and refers only to the remand. Brief for Appellee at 3–5. Despite this, neither the parties nor the Union County nor Snyder County courts took further action on the 1988 Complaint.

On December 21, 2000, the trial court found that the record did not reveal an order "terminating, suspending or vacating" the 1988 Complaint for Support, as those terms are defined in Pennsylvania Rule of Civil Procedure (Pa. R.C.P.) 1910.1.[4] Trial Court Opinion dated December 21, 2000 at 2. The trial court found, and the Superior Court affirmed, that there was no "discontinuance" pursuant to Pa.R.C.P. 229.[5] Ely had not moved for a judgment of non pros, pursuant to Pa.R.C.P. 1037, which provides:

> If an action is not commenced by a complaint, the Prothonotary, upon praecipe of the defendant, shall enter a rule upon the plaintiff to file a complaint. If a complaint is not filed within twenty days after service of the rule, the Prothonotary, upon praecipe of the defendant, shall enter a judgment of non pros.

With the 1988 Complaint hovering in the background, Mother filed her second support action against Ely on September 9, 1997 (the 1997 Complaint). After Ely filed Preliminary Objections and several extensions for supporting briefs, Mother executed the standard Petition to Withdraw and Terminate Action in Support, filling in the blank space for her reason as follows: "Because the first complaint is STILL OPEN i.e. NO

**4.** Pa.R.C.P.1910.1 defines "terminate" as to "end not only the support order, but the support obligation as well;" "suspend" as to "eliminate the effect of a support order for a period of time;" and "vacate" as to "declare a particular support order null and void, as if it were never entered."

**5.** Pa.R.C.P. 229(a) provides that [a] discontinuance shall be the exclusive method of voluntary termination of an action, in whole or "[in] part, by the *plaintiff* before commencement of trial" (emphasis added). The 1988 Complaint was not discontinued by any party and remains open, leading the courts to find that Ely's support obligation accrues back to then.

NEED FOR TWO!" RR at 15. As a result, the trial court dismissed the 1997 Complaint.

Mother filed her third and final Complaint for Support against Ely on September 21, 1999. This action was assigned the same docket number as the 1997 Complaint, which had been dismissed. The trial court noted that this number was assigned "despite the fact that the first complaint filed to this number had been withdrawn and that the initial support action filed to No. 109–1988 remained open." Trial Court Opinion dated December 21, 2000 at 3. Thus, the three Complaints that Mother filed against Ely are: (1) the 1988 Complaint, docket number 109–1988; (2) the withdrawn 1997 Complaint, docket number 97–0137, and (3) the 1999 Complaint, docket number 97–0137.

On September 22, 2000, Ely executed a document admitting paternity, and the trial court established his monthly support obligation. The instant dispute between the parties crystallized here. Mother takes the position that it is July 8, 1988, the date of her first Complaint, and Ely maintains that it is September 21, 1999, the date of her third Complaint. By this time, Tenaya was fifteen years old.

Having sifted through the procedural untidiness created by the 1988 Complaint, which had never been "finally processed," and the 1999 Complaint, docketed to a case dismissed in 1997, we can now proceed to resolve the question of the date on which the support obligation arose.

■ We start with Pa.R.C.P.1910.17(a), which provides that "[a]n order of support shall be effective from the date of filing of the complaint unless the order specifies otherwise." The Rule and Pennsylvania case law favor retroactivity, unless otherwise specified by order.

> There is a sound policy favoring retroactivity in most cases, because the party entitled to support should not be penalized for having to resort to time-consuming court proceedings. Our rules of procedure provide that a support order shall be effective from the date of the complaint unless the order states otherwise. Moreover, we

have indicated in prior decisions that it is preferable for the trial court to state on the record its reasons for denying retroactivity if it does so.

*Sutliff v. Sutliff,* 339 Pa.Super. 523, 489 A.2d 764, 781 (1985), *affirmed in part, remanded in part,* 515 Pa. 393, 528 A.2d 1318 (1987) (internal citations omitted).

■ The preference for retroactivity is congruent with the purpose of an order of support, which is "to assure the party requiring support a reasonable living allowance." *Hainaut v. Hainaut,* 410 Pa.Super. 316, 599 A.2d 1009, 1011 (1991) (quoting *Com. ex rel. Bishop v. Bishop,* 234 Pa.Super. 600, 341 A.2d 153, 156 (1975)).

■ The case *sub judice* is a good example of the time-consuming nature of the litigation process, and the reason why the Rule and the courts prefer retroactivity in support matters. Tenaya was born in 1985, and the question of paternity was not resolved until 2000. While each of the parties alleges that the other could have resolved things more quickly, the fact is that Tenaya received no support for fifteen years as the parties battled in court. In *Crawford v. Crawford,* 429 Pa.Super. 540, 633 A.2d 155, 163 (1993), the Superior Court, referring to the purpose of retroactive support in alleviating hardship, stated: "[I]t follows that the longer the delay, the more apropos retroactivity becomes." The court cited *Shovlin v. Shovlin,* 318 Pa.Super. 516, 465 A.2d 673 (1983), where the court found retroactivity appropriate with a fourteen-month delay between the date of filing the complaint and the award of support. In describing the history of Pa.R.C.P.1910.17(a), the court affirmed the "bias in favor of retroactivity." *Shovlin* at 675, n. 3. In fact, failure to make an award retroactive is reversible error unless specific and appropriate justification for such a ruling is shown.

■ The "Appellant, not Appellee, bears the burden of proof to rebut the presumption of retroactivity." *Karp v. Karp,* 455 Pa.Super. 21, 686 A.2d 1325, 1329 (1996) (citing *Crawford* ). Therefore, Ely has the burden to prove his obligation should not be retroactive to the 1988 Complaint.

The principle of retroactivity is easy to articulate; however, the determination of how to apply it in a case where two Complaints exist is more complicated. If the support obligation of Ely begins in 1988, he argues that he will be required to pay a significant amount of arrearages, to his detriment. Mother argues that if Ely's support obligation does not begin to run until 1999, Tenaya will suffer the financial impact of having no support from him for the first fourteen years of her life.

■ Ely opposes retroactivity to 1988 on two grounds. We agree with the trial court and the Superior Court that each is baseless. First, he argues that retroactive support based on the 1988 Complaint is barred by laches, estoppel, and other considerations, because Mother did not proceed with due diligence. He relies on *Bonds v. Bonds*, 455 Pa.Super. 610, 689 A.2d 275 (1997), as support. However, as the trial court appropriately noted, that case did not involve a child support claim; rather, it dealt with the enforcement of a marital settlement agreement and the recovery of counsel fees. Furthermore, the Superior Court in *Bonds* concluded that laches, or equitable estoppel, did not apply to preclude a wife from enforcing a property settlement. Laches does not arise unless a "party's rights have been so prejudiced by the delay of another in pursuing a claim that it would be an injustice to permit the assertion of the claim against the party so prejudiced." *Id.* at 278. The record in the case does not show any prejudice to Ely's rights. He knew that Mother had been pursuing support from him since 1988. Tenaya was born in 1985. While Ely understandably wants his support obligation to begin in 1999 rather than 1988, the fact that the trial court and the Superior Court did not honor his preference does not constitute prejudice.

Ely claims that if his support obligation runs from July 1988, he will owe Tenaya $87,000 in arrearages and that this is the "sort of prejudice that the laws of equity seek to avoid." Brief for Appellant at 15. He asserts that an award of child support must be "fair, non-confiscatory and attendant to the circumstances of the parties." *Calabrese v. Calabrese*, 452

Pa.Super. 497, 682 A.2d 393, 396 (1996), *petition for allowance of appeal denied,* 547 Pa. 722, 689 A.2d 230 (1997). While we agree with this principle, we do not concur in his implication that an award of $87,000 would violate the requirement of fairness and would be confiscatory. The record does not show any such impact on Ely; he has made no showing of any effect on him or his finances.

Ely states that "the unfortunate reality of this case is that no amount of arrearages will compensate Tenaya for lack of support she received for the first 15 years of her life, but would only serve to punish [him] when those arrearages undoubtedly accrued through no fault of his own." Brief for Appellant at 8. We disagree with Ely's self-serving conclusion of the futility of compensating Tenaya and his lack of "fault" in the situation regarding her first fifteen years.[6] While Mother's legal actions played out over a twelve-year period, she was not the only one responsible for the lengthy proceedings. She had been trying to obtain support from two men, Husband and Ely, during that period. Since 1988, the record shows that Ely exhibited varying degrees of opposition, resistance, and passivity with respect to the efforts of Mother. Examples of this behavior include his successful appeal of a 1989 Order for blood testing to determine paternity, his failure to seek a judgment of non pros regarding the 1988 Complaint, and his preliminary objections and requests for extensions with respect to the 1999 Complaint. Although he was first sued for support in 1988, he did not admit paternity for another twelve years, until a bench trial was scheduled for September of 2000.

6. The dissent attempts to bolster this argument by introducing, *sua sponte,* the notion that an award retroactive to 1988 will result in a "practical irony," which will not benefit Tenaya but instead will reward Mother. Dissenting Opinion, —— Pa. at ——, 838 A.2d at 642. This "irony" arises from the fact that Mother may receive support payments after Tenaya is no longer a minor. However, the dissent fails to recognize that Mother supported Tenaya on her own for the first fifteen years of Tenaya's life, with no support from Appellant, and may well have incurred significant debt in doing so. Given this likelihood, if Mother does receive some portion of the arrearages after Tenaya is no longer a minor; the payments would serve only to make Mother whole.

Furthermore, assuming *arguendo* that Mother did not proceed with due diligence in obtaining support, and that Ely had no responsibility for the protracted proceedings, we would still affirm the trial court's finding that "laches has no application in support or paternity cases." Trial Court Opinion dated December 21, 2000 at 4. In a case similar to the one *sub judice,* the Superior Court found that a putative father did not suffer prejudice as a result of a delay of almost twelve years on the part of mother in telling him about child, and reiterated that "the courts have been extremely cautious applying [laches] to situations in which a child support Order has not been enforced, even when long periods of time are involved." *Rodgers v. Woodin,* 448 Pa.Super. 598, 672 A.2d 814, 817 (1996) (citing *Bullock v. Bullock,* 432 Pa.Super. 643, 639 A.2d 826 (1994)).

Contrary to the assertions of Ely, any dilatory conduct by Mother cannot infringe upon the legal right of Tenaya for financial support. As the trial court found, that right accrued with her birth in 1985. In *Roboski v. Fink,* 447 Pa.Super. 520, 669 A.2d 1017 (1996), the Superior Court held that an action involving a four year delay in instituting a paternity suit was not barred by laches, stating: "The doctrine of Laches is an equitable doctrine, while support is an obligation at law. Therefore Laches as a defense is not available in paternity actions." *Id.* at 1017.

This Court has stated that "[a] parent has the responsibility to provide care, control, and subsistence for his or her child, and a duty to ... support the child. This parental obligation 'is a positive duty and requires affirmative performance.' " *Petition of Lutheran Children and Family Service of Eastern Pennsylvania,* 456 Pa. 429, 321 A.2d 618, 620 (1974) (internal citations and quotations omitted). In a child support hearing, the "main concern is for the welfare of the child. Each parent has a duty which is 'well nigh absolute' to support his or her minor children and each may have to make sacrifices in order to meet this burden." *Scanlon,* 457 A.2d at 102.

Ely's second argument for retroactivity only to 1999 is that it was the 1999 Complaint to which he stipulated paternity. He asserts that the only reasonable interpretation of the Order instructing "final processing" of the 1988 Complaint is that the Complaint was dismissed. He alleges that even if the 1988 Complaint remained open, the filing of the 1999 Complaint "commenced a new action pursuant to Pa.R.C.P.1910.4," and that the "1999 Complaint nullified the unresolved 1988 Complaint because it would not have been possible for two complaints to remain open and therefore subject [him] to 'double dipping.'" Brief for Appellant at 11.

This analysis is not cogent. First, although Pa.R.C.P. 1910.4(a) provides that "[a]n action shall be commenced by filing a complaint with the domestic relations section of the court of common pleas," it does not address the instant situation where a prior Complaint was filed. It certainly does not provide support for Ely's argument that the 1999 Complaint somehow nullified the 1988 Complaint.

Mother's position is more persuasive and better reasoned, with her reliance on Pa.R.C.P. 1028(a)(6), as interpreted in *Crutchfield v. Eaton Corp.*, 806 A.2d 1259 (Pa.Super.2002). That Rule provides that "[p]reliminary objections may be filed by any party to any pleading and are limited to the following grounds: (6) pendency of a prior action or agreement for alternative dispute resolution." In *Crutchfield*, the Superior Court noted that a party can raise preliminary objections based on the pendency of an action and that "[o]nce the defense is raised, a court may dismiss or stay the subsequent proceedings." *Id.* at 1262 (internal citations omitted).

It is interesting to note that Ely has ignored our recent ruling in *Bowser*. Although we limited our review to the issue of whether the court erred in denying a mother's request for counsel fees in a support matter, we affirmed the Superior Court's decision, which made child support retroactive to the date of the mother's second complaint, rather than to the date of her prior complaint, which had been dismissed. At first glance, this would seem to support Ely's argument that his obligation should commence with the filing of the 1999 Com-

plaint, not the one in 1988. In *Bowser*, a mother filed a complaint to establish paternity and for support in 1998, which was dismissed months later. In 2000, she filed a new complaint, seeking counsel fees and support, and this complaint was wrongly assigned the docket number of the 1998 case, after the court ordered the earlier case "reopened." The mother argued that the award should be retroactive to the 1998 complaint, and the court refused to do so because "[t]he initial support action was dismissed; no appeal was taken from the dismissal." *Bowser v. Blom*, 766 A.2d 1259, 1261 (Pa.Super.2001). In the case *sub judice*, the 1988 Complaint was neither dismissed nor appealed.

There is, however, a more critical difference between Ely and the father in *Bowser*. As the Superior Court noted in *Bowser*, the father had been paying child support voluntarily, without a court order, from the time the first complaint was dismissed. This factor weighed heavily in our Court's decision to affirm the refusal to award counsel fees. We looked at the totality of the circumstances and noted:

> This is not a situation where the father was shirking his moral and financial obligations, requiring legal action to force him to accept his responsibilities. To the contrary, [father] readily acknowledged paternity and accepted his paternal responsibility, which led to the original support agreement and the dismissal of [mother's] initial support action.

*Bowser*, 569 Pa. 609, 807 A.2d 830, 837. Unlike the case *sub judice*, "[t]he litigation of [mother's] support complaint was neither protracted nor particularly contentious. [Father] did not deny—indeed, he has never denied—his obligation of support." *Id.* at 837.

Ely's reference to "double dipping" is difficult to comprehend. He seems to imply that if the 1988 Complaint were not nullified, he would be subject to paying arrearages twice. In fact, the trial court did find that both Complaints remained open; the Superior Court affirmed this determination and neither of those tribunals suggested that arrearages could be levied against Ely more than once. If he intended this

reference to mean that Tenaya would be able to "double dip" and receive support based on two Complaints rather than one, the reality is that she was legally entitled to support since 1985. The fact that Mother had filed Complaints for Support against him in 1988 and again in 1999 does not mean that Tenaya is recovering twice, for she was legally entitled to support from 1985 until the present.

We agree that the wording of the Order regarding "final processing" was ambiguous, as the Pennsylvania Rules of Civil Procedure do not define it, and that no court took action pursuant to it. Even so, the parties had the ability on their own to discontinue or non pros the 1988 litigation, and they did not. Mother did not move to terminate or discontinue the action—indeed, she specifically withdrew her 1997 Complaint because the 1988 Complaint was still open and there was no need for two. Ely did not undertake to terminate the 1988 Complaint, by filing an action for judgment of non pros. The trial court correctly found that the 1988 action "was neither discontinued nor terminated. [Ely] himself did not seek the entry of a judgment of non pros, but simply acquiesced in Mother's sporadic and subsequently aborted attempts to secure child support for her daughter." Trial Court Opinion dated December 21, 2000 at 5.

The trial court appropriately weighed the ramifications of a support Order deemed retroactive to July 1988 and found that "such considerations are outweighed by the well-established duty of support owing to [Tenaya], which accrued at the time of her birth in 1985." Trial Court Opinion dated December 21, 2000 at 4. While Ely argues that equity must prevent an outcome requiring him to pay $87,000 to Tenaya, and that, impliedly, such a large amount of money is "confiscatory" or "punitive," our view comports with that of the trial court, as affirmed by the Superior Court. The 1988 Complaint was not terminated, the support rules mandate retroactivity to the date of filing, and parents owe a duty of support to their children that accrues at birth. While we are mindful that the amount of arrearages is significant, we must be even more sensitive to the welfare of Tenaya, who did not have the

support she was entitled to for fifteen years, while her putative and biological fathers contested paternity. The errors made with respect to the disposition and docketing of the Complaints over the years cannot be used to defeat Tenaya's legal right to support from Ely.

## *CONCLUSION*

For these reasons stated above, we affirm the Order of the Superior Court.

Justice EAKIN files a dissenting opinion in which Justice CASTILLE and LAMB join.

Justice EAKIN, Dissenting.

I dissent for two reasons, the first procedural. This appeal is of an order from a complaint filed in 1999; despite the eclectic procedural history, the fact remains that while appellee filed *a* complaint in 1988, she filed *this* complaint in 1999, and to this complaint alone appellant conceded paternity. There are no currently relevant proceedings pursuant to the 1988 complaint; indeed, there have been none since the trial court ordered, unsuccessfully, the "final processing" of this stagnant matter. The rule of retroactivity makes support presumptively applicable from the filing the complaint *which results in the order,* which is 1999; it should not be retroactive to the filing of a complaint abandoned long ago.

Appellee never revived or amended the 1988 complaint; she filed a new complaint in 1999, which commenced a new action. Rule 1910.4(a) states: "An action shall be *commenced* by filing a complaint with the domestic relations section of the court of common pleas." Pa.R.C.P.1910.4(a). (emphasis added). The filing of subsequent complaints did not resuscitate the 1988 complaint, nor were any of them an amendment of the last; amendments require consent or court approval, and appellee had neither. *See* Pa.R.C.P. 1033. Even if they were amendments, they would replace, not revive, the first complaint; either way, their filing took the 1988 complaint off the table. *See, e.g., Skelton v. Lower Merion Township,* 318 Pa. 356, 178

A. 387, 388 (1935) (amendment virtually withdraws originally filed pleading); *see also* 5 Standard Pa. Practice 2d, 34:89 ("[W]hen an amended complaint is filed it withdraws the original complaint...."). These filings did not incorporate the 1988 complaint by reference, and it must be deemed withdrawn. Although the 1988 complaint was never formally dismissed or "processed," any subsequent complaint is a "commencement," and thus a manifestation of the intent to abandon the previous one. *See, e.g.,* Pa.R.C.P. 231 ("After a discontinuance or voluntary nonsuit the plaintiff may commence a second action upon the same cause of action upon payment of the costs of the former action."). Were it otherwise, courts would face multiple complaints for the same action.

Procedural impropriety aside, the majority's result is concurrently unfair to appellant, and unavailing to the child. Had appellant been the cause of this delay, I would afford him no sympathy or relief. However, he is not. He challenged the first complaint and won, the matter being remanded for proceedings that were never scheduled, and which appellee never requested or pursued. Appellant was not the moving party; there was no obligation on his part to pursue anything. Indeed, when faced with an order of the Superior Court that she present evidence to overcome the parental presumption, appellee did nothing. The logical conclusion appellant or the trial court could draw from her inactivity is that she could not meet her burden.

The only subsequent court action was Judge Bromfield's order to "process" the inactive case. Rule 1901 of the Pennsylvania Rules of Judicial Administration established the policy when dealing with inactive, abandoned claims:

> It is the policy of the unified judicial system to bring each pending matter to a final conclusion as promptly as possible consistent with the character of the matter and the resources of the system. Where a matter has been inactive for an unreasonable period of time, the tribunal, on its own motion, shall enter an appropriate order terminating the matter.

Pa.R.J.A.1901(a). This Court gave effect to this policy in Pa.R.C.P. 230.2(a), which provides: "The court may initiate proceedings to terminate a case in which there has been no activity of record for two years or more by serving a notice of proposed dismissal of the court case." Id. President Judge Bromfield clearly meant to terminate this stale, inactive claim when he ordered it be remanded in 1992 to the Court of Common Pleas of Snyder County for "*final* processing pursuant to the Pa. Rules of Civil Procedure." R.R., at 451 (emphasis added). His purpose is evident from the reasoning he included in the order: appellee "has not taken any actions to resolve the issue of paternity of Tenaya Christianson for the past three years." Id. Regardless of the reason this was not accomplished, the lack of action was not at appellant's hands.

The majority suggests appellant "acquiesced" to the 1988 claim's validity by failing to pursue a judgment of *non pros,* under Rule 1037. That Rule allows a *non pros* for failure to file a complaint on demand; it does not apply to failing to act on the complaint already filed. Appellant could not seek a *non pros* under this Rule.

Appellant questioned paternity in the face of the 1988 complaint, pointing out that appellee was still living with her husband at the time of conception; his position was upheld at the appellate level. *See Christianson v. Ely,* 390 Pa.Super. 398, 568 A.2d 961 (1990). If there was something to acquiesce in, it was his victory in the Superior Court, and the order of the trial court sending the case for "final processing"; this, the functional equivalent of a *non pros,* was an order to which appellee also "acquiesced." Appellant had no duty to do anything more on the dormant, dismissed-but-not-processed matter. It was appellee who acquiesced to the legal demise of her 1988 complaint by years of inactivity in the face of an order putting the burden to proceed on her, an unchallenged order to end the case, and by her multiple subsequent complaints.

The rule of retroactivity ensures children do not lose their right to support as a result of the delay inherent in the system

or the recalcitrance of the paying parent. "There is a sound policy favoring retroactivity in most cases, because the party entitled to support should not be penalized for having to resort to time-consuming court proceedings." *Sutliff v. Sutliff,* 339 Pa.Super. 523, 489 A.2d 764, 781 (1985), *affirmed in part, remanded in part,* 515 Pa. 393, 528 A.2d 1318 (1987) (internal citations omitted). This policy is sound, but not in a case where a decade of delay is at the hands of the obligee. Where such delay lies at the feet of the obligee, the policy of total retroactivity becomes illogical. Here, in my judgment, is just such a case. Four years retroactive application may be warranted; 15 years retroactivity is not.

The custodial parent seeking support has an affirmative duty to file for support, and, I believe, an obligation to pursue it actively. Retroactivity does not date from pre-filing status or events; the Rules require a parent to file a claim for support in order to start the clock running on retroactivity. *See* Pa.R.C.P.1910.17(a) ("An order of support shall be effective from the date of the filing of the complaint unless the order specifies otherwise."). If appellee's delay before filing is not grounds for retroactivity, why is post-filing procrastination?

The practical irony of the majority's result is that this child is unlikely to benefit from this punitive order of retroactivity. The total monthly payment, the base order of $562.45, plus an amount toward arrears, will not be higher one way or the other. Appellant is assessed 15 years arrears; the child will be the subject of the primary order for only another three years. Appellant will be ordered to pay support for those three years according to his means (about $6,750 a year), to which will be added a payment toward the arrears. That is, the order will reflect his ability to pay, plus the maximum additional amount he can afford toward the arrears. Regardless of the total of the arrears, the periodic support payment will be as much as he can lawfully be made to pay, regardless of the total arrears owed.

If retroactive to the 1999 complaint, as I believe it should be, appellant would have four years of accumulated arrears

(about $27,000); to fulfill his obligation by the time the child is 18, he would have to pay seven years total support (about $47,250) in three years. He is very likely incapable of accomplishing this while the child will be a minor. Retroactivity for 11 more years will not increase his monthly obligation from this order, which is already at the maximum; what it will do is extend by many years the time he will need to pay the accumulated arrears. Arrears of $87,000 will not benefit this child-it will only benefit the litigationally lethargic appellee to whom the money will flow after the child is gone from her care. Her dilatory conduct and indifference left this child without support through the formative years, but she is rewarded with support sums that will continue after the child has left her home. Fifteen years retroactivity sanctions appellee's delay and rewards her imprudence.

Parents must attend to the best interests of their children; if they file a support claim, we must require that they follow through with it. We should not tolerate, much less encourage, the hibernation displayed by appellee here. She abandoned her 1988 complaint. She offered legal apathy in the face of court orders. She filed new complaints without explanation for her languish and apathy in the intervening years. Seeing a result that goes against the grain of retroactivity's purpose and rewards her inaction, I respectfully offer my dissent.

Justice CASTILLE and LAMB join in this dissenting opinion.