J-S55030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF D.L.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| APPEAL OF D.J., FATHER | : | No. 286 EDA 2014 |

Appeal from the Decree Entered December 18, 2013,
In the Court of Common Pleas of Philadelphia County,
Family Court, at No. CP-51-AP-0000213-2012.

| | | |
|---|---|---|
| IN THE INTEREST OF D.E.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| APPEAL OF D.J., FATHER | : | No. 290 EDA 2014 |

Appeal from the Decree Entered December 18, 2013,
In the Court of Common Pleas of Philadelphia County,
Family Court, at No. CP-51-AP-0000211-2012.

| | | |
|---|---|---|
| IN THE INTEREST OF D.A.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| APPEAL OF D.J., FATHER | : | No. 292 EDA 2014 |

Appeal from the Decree Entered December 18, 2013,
In the Court of Common Pleas of Philadelphia County,
Family Court, at No. CP-51-AP-0000212-2012.

| | | |
|---|---|---|
| IN THE INTEREST OF D.L.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| APPEAL OF D.J., FATHER | : | No. 293 EDA 2014 |

Appeal from the Decree Entered December 18, 2013,
In the Court of Common Pleas of Philadelphia County,
Family Court, at No. 090590015.

BEFORE: BOWES, SHOGAN and OTT, JJ.

MEMORANDUM BY SHOGAN, J.: **FILED OCTOBER 14, 2014**

D.J. ("Father") appeals from the decrees entered on December 18, 2013, granting petitions filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate Father's parental rights to his son, son, D.L.J., born in February 2003, and his daughters, D.L.J., born in September 2005; D.A.J., born in December 2006; and D.E.J., born in November 2009 (collectively the "Children"), pursuant to the Adoption Act, 23 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). We affirm.[1]

We glean the history of this case from the certified record. DHS obtained an order of protective custody on September 24, 2007. Three days later, DHS filed petitions to adjudicate D.L.J. (son), D.A.J., and D.L.J. dependent pursuant to 23 Pa.C.S. § 6302, based on (1) a substantiated Emergency General Protective Services Report alleging that the Children's home lacked food, furniture and hot water, and (b) several visits to locations where the Children had been residing. Dependency Petition, 9/27/07, at ¶¶ 6(a-l). Father was incarcerated as of the date DHS filed the petitions for dependency. *Id.* at ¶ 6(s).

---

[1] We note that our review of this matter was protracted for two reasons: the trial court's delay in transmitting the record to this Court, which was due to medical problems experienced by the trial judge, and briefing extensions granted by this Court to the parties. *See In re: T.S.M.*, 71 A.3d 251, 261 n.21 (Pa. 2013) ("We direct the Superior Court in future cases to ensure that Fast Track cases do not linger, but instead give such cases "priority in both circulation of and voting on proposed decisions." Superior Court Internal Operating Procedures § 65.42."). Acting *sua sponte*, we consolidated the appeals on February 25, 2014.

On October 3, 2007, the trial court adjudicated D.L.J. (son), D.A.J., and D.L.J. dependent and committed them to DHS's custody and care. The month after D.E.J. was born, DHS filed a petition to adjudicate D.E.J. dependent December 9, 2009. The next day, the trial court adjudicated D.E.J. dependent and commited her to DHS's custody and care. The Children remained in DHS's continuous custody and care until 2011, when they moved into kinship care in Virginia with a paternal uncle and their paternal grandmother.

On May 8, 2012, DHS filed petitions seeking the involuntary termination of Father's and E.P.U.'s ("Mother") parental rights to the Children Children and a permanency goal change to adoption. On December 18, 2013, the trial court held a hearing on the petitions. At the hearing, Mother agreed to the voluntary termination of her parental rights and a goal change to adoption, and the parties agreed to finalize her consent at a future date.[2] Thus, the hearing proceeded solely as to Father. N.T., 12/18/13, at 5-8.

At the December 18, 2013 hearing, DHS presented the testimony of its social worker, Ms. Eahana Davis, who the trial court found credible. N.T., 12/18/13, at 34; Trial Court Opinion, 4/21/14, at unpaginated 4. Father

---

[2] The trial court docket reflects that, on March 7, 2014, DHS filed a petition for voluntary termination and a petition to confirm the consent to adoption of Mother, who agreed to voluntarily relinquish her parental rights to the Children. On April 23, 2014, the trial court confirmed Mother's consent. Mother does not challenge the termination of her parental rights to the Children, nor is she a party to this appeal.

testified on his own behalf from prison *via* telephone. N.T., 12/18/13, at 24-30.

Ms. Davis informed the trial court that the Children were in kinship care with their paternal grandmother and their paternal uncle, who works as a corrections officer for the prison system in Nodaway, Virginia, and his wife and family. N.T., 12/18/13, at 8, 14-15. She testified that the Children have a parent-child bond with their paternal uncle, they have been placed with him for two and one-half years, they have adjusted well with him, and they want to stay with his family. *Id.* at 8-9. Contrarily, Ms. Davis opined, the Children do not have a bond with Father. *Id.* at 9.

According to Ms. Davis, DHS became aware of this case on August 31, 2007, when DHS received an emergency general report, alleging that the Children's home was unkempt and lacked food, furniture, and hot water. N.T., 12/18/13, at 11. The Children were adjudicated dependent and committed to DHS. *Id.* Ms. Davis testified that the Children had been in the care of DHS since 2007 and that she had become the DHS social worker in 2008. *Id.* at 9. She stated that Father had been incarcerated prior to her involvement. He was released from prison for approximately six months and was re-incarcerated in 2009. He was incarcerated at the time of the hearing. *Id.*

Ms. Davis informed the trial court that Father has a criminal history. He pled guilty on January 14, 2000, to statutory sexual assault and corruption of a minor, for which he was sentenced to serve four months to twenty-three months in confinement. He also has convictions for numerous drug offenses. N.T., 12/18/13, at 10-12; DHS Exhibit 1. Ms. Davis further testified that DHS lacked any documentation to show that Father has received sex offender treatment. *Id.* at 11.

According to Ms. Davis, Father's Family Service Plan ("FSP") objectives were to complete parenting training, to maintain suitable housing upon release from prison, and to obtain and maintain employment. N.T., 12/18/13, at 12. Ms. Davis testified that Father had stated at every goal-change hearing before the trial court that he believed he would soon be released from prison on parole. *Id.* Ms. Davis also stated that Father had never given her a green sheet from the Pennsylvania Parole Board showing his eligibility for release, nor had he notified her of any actual release date, despite many hearings before the Parole Board. *Id.* at 13.

Ms. Davis informed the trial court that Father is not available to parent the Children, and that, if he were released from prison, he would need drug and alcohol treatment, parenting courses, and sex abuse classes. N.T., 12/18/13, at 13. Ms. Davis stated that these objectives would fairly address Father's needs and that Father would have to complete these objectives upon

upon his release from prison. *Id.* at 15. She further opined that, if Father were released from prison, he would not be capable of parenting the Children. *Id.* Ms. Davis testified it would be detrimental to delay the Children's permanency-through-adoption goal while Father awaits a decision from the Parole Board on his request for release. *Id.* at 15-16. Additionally, Ms. Davis testified that Father's parental rights had already been terminated with regard to an older son, D. *Id.* at 16-17. Ms. Davis explained that Father had been in prison for most of the life of the youngest child, D.E.J. N.T., 12/18/13, at 14. She opined that Father had "no impact" on the other three children as a parent. *Id.*

On cross-examination, Ms. Davis admitted that DHS had not offered Father any services to assist him in completing his goal of locating and occupying suitable housing because he was incarcerated and had a conviction for sexual assault of a minor. N.T., 12/18/13, at 17-18. She stated that DHS never considered Father a reunification resource because he has remained in prison due to his recidivism. *Id.* at 18. Ms. Davis acknowledged that Father completed courses in parenting and anger management during a six-month period when he was not incarcerated. *Id.* at 19. She explained that Father would need to address his parenting skills upon release from prison because he has to learn to parent again, as he has not been with the Children for almost four years. He would also need to

obtain and maintain housing, obtain and maintain employment, and maintain contact with the Children. *Id.*

Ms. Davis acknowledged that Father's FSP objectives did not include mental health treatment or drug and alcohol treatment. N.T., 12/18/13, at 21. She testified that Father indicated he had completed the "Breaking the Cycle" class while incarcerated and that DHS stipulated at a prior hearing that Father had completed that course. *Id.* Additionally, Ms. Davis stated that Father had previously testified that he had completed an anger management class during a prior incarceration, but she had not obtained any documentation to support that claim. *Id.* Ms. Davis testified that DHS received a letter from the paternal family members stating their desire to adopt the Children rather than continue as permanent legal custodians. *Id.* at 23.

Father testified that, although he was incarcerated, he was eligible for parole and was awaiting a decision from the Parole Board. N.T., 12/18/13, at 24-25. He explained that he had served his minimum sentence on his current four-to-eight-year sentence. *Id.* at 25. Father testified that he worked in prison cleaning showers for nineteen cents an hour and that it cost him $13 for a fifteen-minute phone call to the Children. *Id.* at 25-26. Father confirmed that the Children live with his brother in Virginia and that his mother watches them in the afternoon. *Id.* at 26. Father stated that he

speaks with the Children on the telephone once or twice a month, if he has sufficient money. *Id.*

Father confirmed that he took the "Breaking the Cycle" class and the Violence Prevention and Batterers domestic violence course in prison. N.T., 12/18/13, at 27. Father explained that, if released on parole, he intends to remain in Philadelphia. *Id.* Father stated that he wanted to maintain the Children in kinship care so that he could have a relationship with them. *Id.* at 27-28. Father explained that, when he speaks with the Children, he asks how they are doing in school, and he inquires about the sports they play. *Id.* at 28. Father stated that the Children indicated that they remember him and know he is their father. *Id.* at 28.

On cross-examination, Father admitted that he had spent at least ten years in prison and that his current sentence was for a conviction for possession of a firearm. N.T., 12/18/13, at 29. He also acknowledged that his previous requests for parole have been unsuccessful. *Id.* at 29-30.

At the end of the December 18, 2013 hearing, the trial court concluded that DHS "has met [its] burden by clear and convincing evidence to involuntarily terminate Father's parental rights pursuant to 2511A-1, 2, 5 and 8, as well as 2511B." N.T., 12/18/13, at 34. The same day, the trial court entered on its docket the decrees terminating Father's parental rights

to the Children pursuant to section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act.[3]

Father timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2) and (b). On appeal, Father presents one question for our consideration:

> Did the Court err in terminating [F]ather's parental rights where [F]ather is currently incarcerated but is eligible for parole, has maintained employment while incarcerated, has used the small amount of money earned through his employment to contact his children at least once a month, and has completed all parenting, drug, anger management, and recidivism prevention classes available to him, despite not being given Family Service Plan goals or offered services by the Department of Human Services?

Father's Brief at 5.

Father argues that the trial court abused its discretion in terminating his parental rights to the Children under 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). According to Father, DHS failed to establish by clear and

---

[3] The trial court expressly reserved "changing the goal to adoption" until it ruled on Mother's consent to the voluntary termination of her parental rights. N.T., 12/18/13, at 34. We note, however, that the termination decrees contain stock language regarding adoption. **See** Termination Order re D.L.J.-male, 12/18/13, at ¶¶ 5, 6 ("The adoption of [D.L.J.-male] may continue without further notice to or consent of [Father]. . . . [DHS] . . . is hereby authorized to give consent to the adoption of [D.L.J.-male]."). Moreover, Father included references to goal-change orders in his notices of appeal and his concise statements. Nevertheless, because the trial court did not change the permanency goal to adoption at the end of the December 18, 2013 hearing, any goal change order entered after that date is not part of this appeal. Consistent with the context of this appeal, Father does not include any argument regarding a goal change in his appellate brief.

convincing evidence the requisites of each of those statutory factors for the involuntary termination of his parental rights. Father's Brief at 13, 14, 16, 17, 18.

We review an appeal from the termination of parental rights with the following standards in mind:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. **In re: R.J.T.**, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. **Id.**; [**In re: R.I.S.**, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. **Id.**; **see also Samuel Bassett v. Kia Motors America, Inc.**, 613 Pa. 371, 34 A.3d 1, 51 (Pa. 2011); **Christianson v. Ely**, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. **Id.**

> As we discussed in **R.J.T.**, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. **R.J.T.**, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the

-10-

record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826–827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)). Moreover, this Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of 23 Pa.C.S. § 2511(a). ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we affirm on the trial court's analysis of section 2511(a)(2).

Section 2511 provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the

conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

In its opinion, the trial court provided the following analysis of section 2511(a)(2):

The testimony of the social worker established [F]ather's continuous recidivism and criminal history caused great concerns regarding his parental capacity as a reunification resource. (N.T. 12/18/13, pgs. 17-18)  Moreover, the testimony stated that [F]ather needed to complete sex abuse classes and drug/alcohol treatment classes.  (N.T. 12/18/13, pg. 13)  Additionally, [F]ather did not complete a parenting capacity evaluation. (N.T. 12/18/13, pg. 19)  Lastly, . . . [F]ather has had no parental impact on the [C]hildren during their lives. (N.T. 12/18/13, pg. 14).

Trial Court Opinion, 4/21/14, at unpaginated 4.

Father contends that the trial court abused its discretion by placing undue weight on his current incarceration and criminal history.  Father's Brief at 15.  Father argues that he has completed anger management, violence prevention, and domestic violence classes, and that he expects to be released from prison in the near future.  *Id.*  Father complains that the failure of DHS to offer assistance to reunify him with the Children was a deprivation of his guarantee to due process under the United States Constitution.  Thus, Father urges, the trial court erred in terminating his parental rights under section 2511(a)(2).  *Id.* at 16.

We have explained that:

to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003)

(citations omitted). Moreover, the Pennsylvania Supreme Court has

analyzed an inquiry under 23 Pa.C.S. § 2511(a)(2) as follows:

> As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."
>
> This Court has addressed incapacity sufficient for termination under § 2511(a)(2):
>
>> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.
>
> *In re Adoption of J.J.*, 515 A.2d 883, 891 (Pa. 1986) (*quoting In re: William L.*, 383 A.2d 1228, 1239 (Pa. 1978)).

*In re Adoption of S.P.*, 47 A.3d at 827.

The *S.P.* Court further held that:

-13-

incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 47 A.3d at 828.  Upon re-visiting its decision in *In re: R.I.S.*, 36 A.3d 567 (2011), regarding incarcerated parents, the *S.P.* Court held "definitely" that:

incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2).  *See e.g. Adoption of J.J.*, 515 A.2d [883] at 891 [(Pa. 1986)] ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re:*] *E.A.P.*, [944 A.2d 79, 85 (Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).  If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b).  In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*In re Adoption of S.P.*, 47 A.3d at 830-831.

-14-

Additionally, this Court has stated that a parent is required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

Here, the trial court found clear and convincing evidence in the record that the repeated and continued incapacity, abuse, neglect, or refusal of Father—occasioned by his incarceration—had caused the Children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being, and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by Father. Trial Court Opinion, 4/21/14, at unpaginated 4. We agree.

The evidence showed that, given Father's repeated incarcerations, DHS DHS did not consider him a candidate for reunification services. The evidence also demonstrated that, even though DHS did not offer reasonable efforts to assist Father in reunifying with the Children, the continued incapacity, abuse, neglect, or refusal to parent could not or would not be remedied because of his incarceration. Moreover, the trial court's credibility and weight determinations are supported by competent evidence in the record. *In re Adoption of S.P.*, 47 A.3d at 826-827. In reaching its

conclusion that Father could not and would not remedy his failure to parent, the trial court properly considered the history of the case, including Father's neglect of the Children and his repeated incarcerations. Father cannot now shift the blame to DHS for his failure to parent the Children during the six months that he was not incarcerated.

Father's argument regarding 23 Pa.C.S. § 2511(a)(2) essentially asks this Court to make credibility and weight determinations different from those of the trial court. While Father may love the Children, a parent's own feelings of love and affection, without more, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). As we stated in *In re Z.P.*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

Based on the foregoing, we conclude that the trial court's determinations regarding 23 Pa.C.S. § 2511(a)(2) are supported by sufficient, competent evidence in the record. Therefore, the trial court did

not err in terminating Father's parental rights to the Children pursuant to section 2511(a)(2).

Having determined that the requirements of section 2511(a)—which focus on the parent—were satisfied, we next review this matter through the lens of subsection (b), which focuses on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008, 1009 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Here, Father asserts that DHS failed to produce evidence that the termination of his parental rights is in the best interest of the Children. Father's Brief at 18. Father claims that, because he has been in regular contact with the Children and they have a familiar relationship with him,

-17-

DHS failed to establish that the Children would not suffer irreparable harm if his parental rights were terminated. *Id.*

The trial court concluded otherwise:

In the instant matter, the testimony established that the [C]hildren would not suffer any irreparable emotional harm if . . . [F]ather's parental rights were terminated. (N.T. 12/18/13, pgs. 4, 8, 34) The [C]hildren have not had an opportunity to bond with [F]ather due to his incarcerations. (N.T. 12/18/13, pgs. 9, 22) The [C]hildren have bonded with their [p]aternal grandmother. (N.T. 12/18/13, pgs. 4, 8, 14) Additionally, the testimony described the relationship between the [C]hildren and their paternal uncle and aunt as strong and loving. (N.T. 12/18/13, pgs. 8, 14, 23)

As explained in the initial Order, the Trial Court found by clear and convincing evidence that [DHS] met [its] statutory burden pursuant to 23 Pa.C.S.A. § 2511(a). . .(2). . .and §2511 (b). . .

Lastly[,] in the instant matter, the social worker for [DHS] testified credibly. (N.T. 12/18/13, pg. 34)

**Conclusion:**

For the preceding reasons, the [trial] court finds that DHS met its statutory burden by clear and convincing evidence regarding the termination of parental rights pursuant to 23 Pa.C.S.A. § 2511. Furthermore, the court finds that its ruling will not cause D.L.J.[-male], D.E.J., D.A.J. and D.L.J. to suffer irreparable harm[,] and it is in the best interest of the [C]hildren as [a] result of testimony regarding the [C]hidren's safety, protection, mental, physical and moral welfare to terminate the parental rights.

Trial Court Opinion, 4/21/14, at 4-5 (unpaginated).

Upon review, we conclude that the record contains sufficient evidence from which the trial court could determine that Father has not provided for

the Children's developmental, physical, and emotional needs and welfare, and will not be able to provide for the Children's needs, including a stable and appropriate home, because of his incarceration. Accordingly, we discern no error in the trial court's ruling that termination of Father's parental rights would be in the best interests of the Children pursuant to 23 Pa.C.S. § 2511(b).

With regard to the bond analysis component of section 2511(b), we have stated that, in conducting a bond analysis, the trial court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d at 1121. This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008).

Here, the record demonstrates that Father contacted the Children by telephone once or twice a month, if he had the money for a phone call. N.T., 12/18/13, at 26. The record contains no testimony that Father mailed letters or cards to the Children, remembered them on their birthdays or holidays, or demonstrated interest in their medical or educational status. Moreover, Father's testimony that he wanted the Children to remain in kinship care so he could maintain his relationship with them focuses on his

desires and not on what is best for the Children. *Id.* at 27–28. In short, Father failed to "exhibit [the] bilateral relationship which emanates from the parent['s] willingness to learn appropriate parenting . . . ." *In re K.K.R.S.*, 958 A.2d 529, 534 (Pa. Super. 2008). The trial court properly found from the evidence that Father, because of his absence from the Children's life, did not put himself in a position to develop a bond with the Children. Trial Court Opinion, 2/21/14, at unpaginated 4. *Accord In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003) ("[The trial court's] findings show that there was clear clear and convincing evidence that Father did not come close to doing what he should have done to bond with his children, even considering his incarceration.").

Additionally, as part of its bonding analysis, the trial court examined the Children's relationship with the kinship parents, their paternal grandmother and paternal uncle and his family. Trial Court Opinion, 2/21/14, at unpaginated 4. *Accord In re: T.S.M.*, 71 A.3d at 267-268 (stating that existence of a bond attachment of a child to a parent will not necessarily result in the denial of a termination petition, and the court must consider whether the child has a bond with the foster parents). The trial court found that Children have a bond with their paternal grandmother, and they have a relationship with their paternal uncle and his wife that is strong

and loving. Trial Court Opinion, 2/21/14, at unpaginated 4. This finding is supported by the record. N.T., 12/18/13, at 8-9.

As there is sufficient competent evidence in the record to support the trial court's credibility and weight assessments regarding the Children's needs and welfare, and the absence of any bond with Father, we conclude that the trial court did not abuse its discretion as to 23 Pa.C.S. § 2511(b). *In re Adoption of S.P.*, 47 A.3d at 826-827.

In sum, the trial court did not err in determining that DHS satisfied its burden of proving that grounds for the involuntary termination of Father's parental rights exist and that termination of Father's rights would serve the best interest of the Children. Accordingly, we affirm the decrees terminating Father's parental rights to the Children.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/14/2014