J-S10016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.D.W., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.A.O., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2946 EDA 2017 |

Appeal from the Order Entered August 8, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0001185-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: Y.N.S.O.-P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.A.O., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2948 EDA 2017 |

Appeal from the Order Entered August 8, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0001186-2016

BEFORE:  BOWES, J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.:                          **FILED APRIL 24, 2018**

N.A.O. ("Mother") appeals the decrees entered August 8, 2017 that granted the petitions filed by the Philadelphia Department of Human Services ("DHS" or the "Agency") seeking to involuntarily terminate her parental rights to her children, Y.N.S.O.-P. (a female born in October 2005) and T.D.W., Jr., (a male born in March 2011) (collectively the "Children") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and to change

the Children's permanency goal to adoption pursuant to 42 Pa.C.S. § 6351.[1]

We affirm.

In its opinion, the trial court set forth the following procedural history and factual background regarding this appeal.

> On September 5, 2014, [DHS] received a General Protective Services ("GPS") report which alleged that the Children were fearful of T.D.W., Jr.'s father[, T.W.,] ("Father") and that Father was physically abusive towards the Mother ("Mother") and Children. (Statement of Facts Y.N.S.O.-P. Paragraph A). On or around September 9, 2014, DHS visited the family's home. During this visit, Y.N.S.O.-P. told DHS that Father was abusive towards Mother. (Statement of Facts Y.N.S.O.-P. Paragraph 13).
>
> On November 6, 2014, DHS held a Family Service Plan ("FSP") meeting. The goal identified for the Children was to remain in the home. The objectives identified for Mother were (1) to participate in individual, marital and family counseling; (2) [to] not use physical violence or threats to resolve family conflicts; (3) to participate in a mental health evaluation; (4) to comply with all treatment recommendations including therapy and/or medication as prescribed and (5) to sign authorizations to allow the Children and Youth Division ("CYD") to obtain copies of evaluations and progress reports. (Statement of Facts Y.N.S.O.-P. Paragraph I).
>
> On April 1, 2015, DHS received a GPS report alleging that during a family outing on March 28, 2015, Mother hit Y.N.S.O-P. (Statement of Facts Y.N.S.O.-P. Paragraph Q). On April 7, 2015, DHS sought to interview Y.N.S.O.-P[.] to discuss the alleged incident. Thereafter, DHS received verbal threats from Mother

---

[1] On August 8, 2017, the trial court also terminated the parental rights of T.W., the putative father of T.D.W., Jr., and provided that the goal was changed to adoption. In a separate decree entered on that same date, the trial court terminated the parental rights of W.S.J.P., the putative father of Y.N.S.O.-P., and provided that the goal was changed to adoption. Neither T.W. nor W.S.J.P., nor any other putative father, is a party to the present appeal, nor has any such putative father filed a separate appeal.

and Father about DHS['] involvement.  (Statement of Facts Y.N.S.O.-P. Paragraph S).

On April 13, 2015, an emergency motion was submitted by DHS resulting in DHS obtaining an Order for Protective Custody for the Children.  (Statement of Facts Y.N.S.O.-P. Paragraph X.)  Thereafter, on April 13, 2015, DHS took protective custody of Y.N.S.O.-P. at her school with police assistance.  (Statement of Facts Y.N.S.O.-P. Paragraph X).  When Mother arrived at the school to learn that Y.N.S.O.-P. was being taken into protective custody by DHS, Mother refused to tell DHS the whereabouts of [the] [c]hild['s] [s]ibling T.D.W[., Jr.] and became combative with DHS and the police.  She eventually bit a police officer.  (Statement of Facts Y.N.S.O.-P. Paragraph Y).

On April 13, 2015, Father provided false information to school about the whereabouts of T[.]D[.]W., Jr. Thereafter, DHS learned that T.D.W., Jr. was at the family home with Father.  Father refused to allow DHS and the police access to the family home.  DHS obtained a break down order and removed T.D.W., Jr. from the home.  (Statement of Facts Y.N.S.O.-P. Paragraph Z).  Thereafter, on April 14, 2015, Mother was arrested and charged with Aggravated Assault, Terroristic Threats, Recklessly Endangering Another Person and Resisting Arrest for biting the police officer on April 13, 2015.  (Statement of Facts Y.N.S.O.-P. Paragraph BB).

On June 23, 2015, Mother and Father appeared before the Honorable Judge Jonathan Irvine for an adjudicatory hearing after which the Children were adjudicated dependent.  (Statement of Facts Y.N.S.O.-P. Paragraph GG)[.]  Thereafter, on August 3, 2015, the Community Umbrella Agency ("CUA") revised the Single Case Plan ("SCP").  The objectives identified for Mother were (1) to continue attending individual therapy sessions; (2) to address anger management; (3) to resolve issues of domestic violence; (4) to confirm and attend weekly visits with the Children; (5) to participate in a Family Group Decision Making ("FGDM"); and (6) to participate in a Parenting Capacity Evaluation ("PCE"). (Statement of Facts T.D.W., Jr. Paragraph EE).

On February 9, 2016, Dr. Erica Williams, Psy.D.[,] and Samantha Peterson, M.A. conducted a PCE with Mother that recommended: (1) Mother attend weekly therapy with an individual trained in providing trauma focused [counseling]; (2) Mother develop a

financial plan to provide for herself and the Children to include the provision of housing separate from the [f]ather; (3) Child, T.D.W., Jr. to enroll in individual therapy; (4) and that visitation between the Mother and Children be supervised. (Statement of Facts T.D.W., Jr. Paragraph LL).

In May 2016, CUA learned that Mother uploaded a GoFundMe account asking for money. Mother stated on social media that she was in an abusive relationship. (Statement of Facts T.D.W., Jr. Paragraph QQ). On September 9, 2016, CUA revised SCP for Mother. The objectives identified for Mother were (1) to continue attending individual therapy sessions; (2) to engage in family therapy upon [sic]; (3) to follow all recommendations of the . . . [PCE]; (4) to continue to participate in the domestic violence program known as Women in Transition; (5) to attend weekly individual and group trauma therapy; (6) to have no contact with the Children until further action of the [c]ourt; (7) to attend the Women's Empowerment Program and (8) to attend Anger Management Counseling. On August 18, 2016, following a permanency review hearing [the trial c]ourt issued an order stipulating that Mother was to not visit the Children based on her ongoing anger issues and abusive behavior towards [C]hildren, DHS, CUA Workers and foster parents.

On or about December 5, 2016, DHS filed the underlying [p]etition to [t]erminate the [p]arental [r]ights of Mother and Father.

Trial Court Opinion, 11/17/17, at 1-5.

On August 8, 2017, the trial court held a hearing on the termination/goal change petitions. Mother was present at the hearing, and was represented by counsel, Attorney James Demarco. Additionally, Attorney Michael Graves was present as the Child Advocate for the Children, and Attorney Lee Kuhlmann was present as the guardian *ad litem* for the Children. Father's counsel, Ashley Sullivan, was present, as well.

On August 8, 2017, the trial court entered the decrees terminating Mother's parental rights to the Children pursuant to 23 Pa.C.S. § 2511(a)(1),

- 4 -

(2), (5), (8), and (b), and changing their permanency goal to adoption pursuant to 42 Pa.C.S. § 6351.[2] Also on August 8, 2017, Mother, acting *pro se*, timely filed her notices of appeal, along with concise statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i).[3] On September 20, 2017, Mother's counsel filed supplemental concise statements on her behalf. On October 3, 2017, this Court, acting *sua sponte*, consolidated the appeals.[4]

In her brief on appeal, Mother raises one issue:

> [w]hether the trial court abused its discretion and erred as a matter of law in [ruling that the] termination of parental rights [was] warranted under 23 Pa.C.S. §§ 2511(a)(1), 23 Pa.C.S. § 2511(a)(2), 23 Pa.C.S. § 2511(a)(5), 23 Pa.C.S. § 2511(a)(8) and 23 Pa.C.S. § 2511(b) in that the judge's decision was against the weight of the evidence[?]

Mother's Brief, at 7.[5]

---

[2] *See* Trial Court Opinion, 11/17/17, at 1.

[3] *See Commonwealth v. Ellis*, 626 A.2d 1137, 1139, 1141 (Pa. 1993) (stating that there is no constitutional right to hybrid representation either at trial or on appeal).

[4] On October 16, 2017, T.W.'s trial counsel, Attorney Ashley Sullivan, filed a motion to withdraw as counsel. This Court, acting *per curiam*, granted the motion on December 8, 2017.

[5] Mother waived any challenge to the goal change to adoption by failing to raise that issue in her concise statement and brief. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the statement of questions involved in his or her brief on appeal).

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, [the] standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***R.I.S.***, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel Bassett v. Kia Motors America, Inc.***, 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***
>
> As [] discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. [Our Supreme Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead [appellate courts] must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental

rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.***, *quoting **In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will consider section 2511(a) and (b) together, as did the trial court. Section 2511 provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the

> parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental,

physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], [our Supreme Court] held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological

aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

With regard to the argument that the trial court improperly terminated the parental rights of Mother because the weight of the evidence did not support a finding that the requirements of section 2511(a) and (b) were met, the trial court stated the following:

> The Children were adjudicated dependent on June 23, 2015. The record demonstrates an ongoing unwillingness of Mother to provide care or control for the Children or to perform any parental duties. Her failure to remedy the conditions that brought the Children into care were obvious to [the trial c]ourt. Throughout the entire case history Mother was abusive to [C]hildren, DHS workers, CUA personnel and foster parents.
>
> Furthermore, Mother interfered with the efforts of DHS, CUA and [the trial c]ourt to facilitate the reunification of Mother and [C]hildren. This was demonstrated by the fact that recent improvement as to the Children's behavior and health was the

direct result of proper foster care and DHS involvement, which had nothing to do with Mother's parenting efforts. On the contrary, Mother sought to dismantle the very foster parent and DHS involvement which so benefitted [C]hildren by her own abusive and erratic behavior. The documents and testimony discussed below provided [the trial c]ourt evidence that termination of the parental rights of the Mother would be in the best interest of [] Children. Consequently, the [trial c]ourt found clear and convincing evidence to terminate the parental rights of [] Mother pursuant to 23 Pa.C.S.A. §§ 2511(a)(1),(2)[,] (5) and (8)[,] and 23 Pa.C.S.A. § 2511(b).

Throughout the involvement of the DHS and CUA, the court held regularly scheduled Permanency Review hearings to monitor the family's compliance with all court orders and the Single Case Plan ("SCP"). These SCP meetings were held to assist the family with obtaining any and all appropriate services as an aid to facilitate reunification. On September 9, 2016, CUA revised SCP for Mother. The objectives identified for Mother were (1) to continue attending individual therapy sessions; (2) to follow all recommendations of the [PCE]; (3) to follow through with family therapy and to comply with all recommendations; (4) to ensure Mother communicated verbally with CUA; (5) to continue to participate in the domestic violence program known as Women in Transition; (6) to attend weekly individual and group trauma therapy; (7) to have no contact with the Children until further action of the [c]ourt: (8) to attend the Women's Empowerment program and (9) to attend Anger Management Counseling.

The CUA Representative testified that after the suspension of visitation between the Mother and Children there was a marked improvement with the behavior of the Children. (N.T., 8/8/17, at 38-40). The CUA Representative also testified that Mother violated [c]ourt orders by communicating with hospital staff while V.N.S.O.[-]P. was hospitalized and visiting the Children while they were in care. (N.T., 8/8/17, at 40-41). Although Mother had completed anger management courses, the CUA Representative testified that Mother had continued to exhibit erratic and aggressive behavior. Specifically, Mother consistently sought to intimidate CUA workers. On one occasion, Mother brought other women to a private meeting with CUA workers solely to intimidate CUA personnel. (N.T., 8/8/17, at 48-52). Mother also interfered with the Children's foster care placement resulting in multiple reassignments. As result of Mother making unfounded allegations

against foster parents, T[.]D[.]W[., Jr.] had been reassigned to ten (10) separate placements. (N.T., 8/8/17, at 60-64). The CUA representative also testified that Y.N.O.S.[-]P[.] was bonded to her foster parent. (N.T., 8/8/17, at 55-56). The CUA Representative testified [that] T.D.W., Jr. was happy with [his] foster parents. (N.T., 8/8/17, at 58-59). The CUA Representative testified that it would be in the best interest of the Children if [M]other's parental rights were terminated. (N.T., 8/8/17, at 60). At the hearing, Dr. Williams testified that she conducted a PCE evaluation of Mother in February 2016 where she opined that Mother failed to address underlying domestic violence in the home and was unable to control her own aggression. (N.T., 8/8/17, at 105-107). Dr. Williams also testified that Mother's attempts to sabotage the Children's placement indicated that she lacked parental capacity or the ability to provide safety for the Children. (N.T., 8/8/17, at 111-114).

Although Mother alleges that her attorney failed to provide adequate assistance of counsel[,] the record indicates that he was not passive during the course of the hearing[.] Mother's counsel engaged in an aggressive cross[-]examination of the CUA Representative and Dr. Williams. The testimony of the CUA Representative and Dr. Williams was deemed to be credible and accorded great weight. Based upon their testimony elicited at the Termination Hearing as well as the documents in evidence, th[e trial c]ourt found clear and convincing evidence to terminate parental rights of Mother pursuant to 23 Pa.C.S.A. §§ 2511(a)(1)[,] (2)[,] (5)[,] and (8)[,] finding she had failed to remedy the conditions that brought the Children into care based upon her [continuing] unwillingness to cooperate with social services and mental health treatment. The [c]ourt also found that termination of [] Mother's parental rights would be in the best interest of the Children pursuant to 23 Pa.C.S.A. § 2511(b).

Trial Court Opinion, 11/17/17, at 6-11.

After a careful review of the record, this Court finds the trial court's decision to terminate the parental rights of Mother under section 2511(a)(2) and (b) is supported by competent, clear and convincing evidence in the record. *In re Adoption of S.P.*, 47 A.3d at 826-827. Thus, we find no abuse

of discretion in the trial court's termination of Mother's parental rights to the Children.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:4/24/18