J-S83028-18
J-S83029-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN RE: ADOPTION OF L.P.J. IN RE: ADOPTION OF B.G.J. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.J., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1053 WDA 2018 |

Appeal from the Order Entered June 13, 2018
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  132 of 2017,
133 of 2017

| IN RE: ADOPTION OF L.P.J. IN RE: ADOPTION OF B.G.J. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.P.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1054 WDA 2018 |

Appeal from the Order Entered June 13, 2018
In the Court of Common Pleas of Westmoreland County Orphans'
Court at No(s):  132 of 2017,
133 of 2017

BEFORE:  PANELLA, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                              FILED MARCH 11, 2019

C.J. ("Father") and M.P.K. ("Mother") appeal from the orders dated and

entered June 13, 2018, granting the petitions filed by the Westmoreland

County Children's Bureau ("WCCB" or the "Agency") seeking to involuntarily

terminate their parental rights to their minor children, L.P.J. (a daughter born in July of 2011), and B.G.J. (a son born in December of 2013) (collectively, the "Children"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511. Pursuant to Pa.R.A.P. 513, we have consolidated these appeals sua sponte. After careful review, we affirm.

The Children were adjudicated dependent on July 29, 2014, and have remained in Agency custody since that time. N.T., 6/13/18, at 6, 60-61. The Agency had been working with both Father and Mother before assuming custody of the Children. Id. When the Children came into custody, B.G.J. was six months old, and L.P.J. was three years old. Id. The Children were taken into Agency custody based on a history of domestic violence between Father and Mother. Id. At the time of the adjudication hearing, Father was incarcerated. Id. at 6, 61. Mother allowed herself to be involved in other violent relationships, even at the time of the hearing. Id. at 62. Mother also had a history of mental health and substance abuse concerns. Id. at 62-66. While paternity formerly had been an issue, it was established through DNA testing following the adjudication hearing. Id. at 80.

The Children initially were placed with S.D. and J.D. as foster parents, but were subsequently removed from their care. N.T., 6/13/18, at 52. Children were placed with T.D. ("Foster Mother") on April 7, 2015. Id. At the time of the termination petition hearing, the Children resided with Foster Mother. Id.

From the time of the adjudication hearing, Father and Mother were minimally compliant and made minimal progress on their goals. N.T., 6/13/18, at 6-11. On December 1, 2017, the Agency filed petitions to involuntarily terminate Father's and Mother's parental rights to the Children. On January 17, 2018, the trial court held a scheduling hearing regarding the petitions. N.T., 1/17/18, at 1-8. Both Father and Mother appeared at the scheduling hearing and stated that they were contesting termination. Id. at 2-3.

On June 13, 2018, the trial court convened the evidentiary hearing on the petitions.[1] Attorney Mary Ann Grec represented the Agency. Father was present with his counsel, Attorney Emily Smarto. Mother was present with her counsel, Attorney Ashley M. Lovelace. Attorney Diane Murphy was present as the Children's guardian ad litem ("GAL"). Attorney Kelly Eshelman was present as the Children's legal counsel.

At the hearing, the Agency presented the testimony of Lisa Zamborsky, the in-home family specialist from Wesley Family Services, formerly Wesley Spectrum Services. N.T., 6/13/18, at 11-12. The Agency then presented the testimony of Rachael Graham, a licensed social worker with King and

---

[1] At the time of filing, the Agency's Petition for Involuntary Termination of parental rights for each parent alleged that grounds for termination existed under 23 Pa.C.S. § 2511(a)(8) and (b). At the commencement of the termination hearing, the Agency motioned the court to amend the petition against only Father to also include grounds under Section 2511(a)(1). N.T., 6/13/18, at 5-6. The trial court granted that motion. Id. at 6.

Associates. Id. at 16. She formerly worked for the Agency as a parenting and visitation specialist, and then as a therapist. Id. Next, the Agency presented the testimony of Alexis Jacomen, a therapist with King and Associates. Id. at 51. Finally, the Agency presented the testimony of Tara Lorenzo, a caseworker with the Agency. Id. at 58-59. Mother presented the testimony of Amanda Davis, a targeted case manager for behavioral health at Westmoreland Casemanagement and Supports, Inc. ("WCSI"). Id. at 119-120. Lastly, Father testified on his own behalf.

On June 13, 2018, the trial court entered orders involuntarily terminating the parental rights of Father and Mother to L.P.J. and B.G.J. pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (8), and (b).[2] On July 10, 2018, and July 12, 2018, Father and Mother, respectively, timely filed notices of appeal from the termination orders as to the Children along with concise statements of errors complained of on appeal. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

In his brief on appeal, Father raises the following issues:

I. Whether the Honorable Trial Court erred in finding by clear and convincing evidence that the moving party met it[s] burden under 23 Pa.C.S.A § 2511(b) that the best interests of the children are met by terminating the Father's parental rights?

_____

[2] Despite the termination petition against Mother asserting grounds for termination under Section 2511(a)(8), and the amended petition against Father asserting grounds under Section 2511(a)(1) and (8), the trial court's order terminating the parental rights of Father and Mother indicated that it was doing so under Section 2511(a)(1), (2), (8), and (b).

II. Whether the Honorable Trial Court erred in finding by clear and convincing evidence that the moving party met its burden as to terminating parental rights of Father under 23 Pa.C.S.A.§ 2511(a)(8)?

III. Whether the Honorable Court erred in finding by clear and convincing evidence that the moving party met its burden as to terminating parental rights of Father under 23 Pa.C.S.A. § 2511(a)(2)?

IV. Whether the Honorable Trial Court erred in finding by clear and convincing evidence that the moving party met its burden as to terminating parental rights of Father under 23 Pa.C.S.A. § 2511(a)(1)?

Father's Brief at 4.

In her brief on appeal, Mother raises the following issues:

1. Was clear and convincing evidence presented to show that termination was warranted pursuant to 23 Pa.C.S.A. Sections 2511(a)(1), 2511(a)(2), 2511(a)(8) and 2511(b)?

2. Did the trial court err in terminating Mother's parental rights despite evidence that Mother had participated and made significant progress in services provided?

3. Did the trial court err in terminating Mother's parental rights by relying upon unsubstantiated reports involving Mother and her paramour?

4. Did the trial court err in terminating Mother's parental rights by failing to give primary consideration to the developmental, physical and emotional needs and welfare of the children?

5. Did the trial court err in terminating Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1) and 23 Pa.C.S.A. §2511(a)(2) when the Petition for Involuntary Termination failed to request termination pursuant to said sections?

Mother's Brief at 4.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. In re: R.J.T., 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. Id.; R.I.S., [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Id.; see also Samuel Bassett v. Kia Motors America, Inc., 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); Christianson v. Ely, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. Id.

> As we discussed in R.J.T., there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. R.J.T., [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. In re Adoption of Atencio, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

In re Adoption of S.P., 47 A.3d 817, 826-27 (Pa. 2012). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted

grounds for seeking the termination of parental rights are valid.  In re R.N.J.,

985 A.2d 273, 276 (Pa. Super. 2009).  Moreover, we have explained:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

Id. (quoting In re J.L.C., 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination

of parental rights with regard to any one subsection of Section 2511(a).  In

re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).  "[W]e may affirm

the orphans' court on any basis supported by the certified record."  In re

Adoption of Z.S.H.G., 34 A.3d 1283, 1288 (Pa. Super. 2011).

Here, we will focus on Sections 2511(a)(8),[3] and (b), which provide, in

relevant part, as follows:

> § 2511. Grounds for involuntary termination
>
> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

_____

[3] We note Mother's argument on appeal regarding the absence of Sections 2511(a)(1) and (2) as grounds for termination in the petition filed against her. Review of the record reflects that the termination petition filed against Mother sought termination on the basis of Section 2511(a)(8) only.  N.T., 6/13/18, at 4-5.  The Agency has conceded this point.  Agency's Brief re: Mother at 22-23.  However, as will be discussed below, because the requirements of Section 2511(a)(8) have been met, we need not further discuss the omission of Sections 2511(a)(1) and (a)(2) from the termination petition filed against Mother.  As noted, we may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a).  In re B.L.W., 843 A.2d at 384.

* * *

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

With regard to Section 2511(a)(8), in order to terminate parental rights, an agency must prove by clear and convincing evidence:

> (1) that the child has been removed from the care of the parent for at least twelve (12) months; (2) that the conditions which had led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child.

In re C.L.G., 956 A.2d 999, 1005 (Pa. Super. 2008) (en banc). Notably, termination under Section 2511(a)(8) does not require an evaluation of a parent's willingness or ability to remedy the conditions that led to placement of his or her children. In re Adoption of R.J.S., 901 A.2d 502, 511 (Pa.

Super. 2006). Instead, subsection 8, the subsection relevant to our discussion, merely requires that the conditions "continue to exist." In re S.H., 879 A.2d 802, 807 (Pa. Super. 2005).

This Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but under Section 2511(b), the focus is on the child. In re Adoption of C.L.G., 956 A.2d at 1008. In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In re K.M., 53 A.3d 781, 791 (Pa. Super. 2012). In In re E.M., 620 A.2d [481,] 485 [(Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. In re K.M., 53 A.3d at 791.

In re: T.S.M., 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, [S]ection 2511(b) does not require a formal bonding evaluation." In re Z.P., 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not

necessary and may even be detrimental to the child." In re K.Z.S., 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

[C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a de facto beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

In re K.K.R.-S., 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. See In re K.Z.S., 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." In re B.,N.M., 856 A.2d 847, 856 (Pa. Super. 2004).

Here, the trial court made the following findings:

On findings that [Father] was violent and destructive, and [Mother] in need of mental health services, services were ordered, and the [C]hildren adjudicated dependent on July 29, 2014.

The [C]hildren were placed in foster care with [T.D., Foster Mother,] on April 7, 2015. At that time[,] they were found to have been exposed to verbal and physical domestic violence between the parents which necessitated multiple police calls, and [Mother's] hospitalization. (Their other children, twin infants, were removed in 2012 due to [Mother] feeling "overwhelmed.")

Over the past three years[,] the parents have made no perceivable progress toward alleviating the conditions under which custody was lost. The [C]hildren have demonstrated almost all of their development only when out of the parents' custody.

THE CHILDREN

1. [L.P.J.] was not talking when removed from the parents, even though she was almost four years of age. She was diagnosed with development and post-traumatic stress disorders. She became aggressive with her peers.

Only through services obtained while in foster care has she made progress. She is now in the 1st grade with an IEP.

[B.G.J.], now almost age five, attends Head Start and, while in pre-adoptive status, is meeting developmental norms. [B.G.J.] has come through severe infectious diseases and lymph node surgery, although [Mother] did not visit the hospital or attend surgery.

THE PARENTS

3. [Mother] was successfully discharged from drug treatment in September of 2017, but thereafter did little to re-establish herself as a caregiver. The permanency review hearing of April 9, 2018, provided a clear perspective, and the minimal compliance and failure to demonstrate any progress provides the basis of this termination order. All conditions outlined repeatedly in permanency reviews were unabated by the time of [the] termination hearing. These, in summary[,] are: [Mother]

- 11 -

(a) failed to continue with drug screens
(b) quit her job
(c) failed to participate in mental health treatment or domestic violence counselling
(d) continues to have multiple police incidents (domestic violence, etc.)
(e) exhibited impulse behaviors at the most important times – in an in-court interview hearing [Mother] excused herself to go to the bathroom and never returned.

4. [Father] has nine children in various places and situations, but[,] in regard to the children herein, he has had virtually no contact. He has adamantly refused services, while compiling an extensive criminal history. [Father] maintains he has done nothing wrong but he admitted that "the system aggravates me", and, in substance, has not made any progress toward realistic parenting goals – such as having a stable residence, employment, remaining out of jail, etc., and maintaining contact with the [C]hildren.

## CONCLUSION

Since the dependency adjudication in July 2014, over four years ago[,] each parent has demonstrated a continuing incapacity (in [Mother's] case) or refusal (in [Father's] case) to provide essential parental care, control or subsistence needed by the [C]hildren for their physical and mental wellbeing. All essential care has been provided by others. Their failure and refusal to provide basic parenting has been demonstrated clearly and convincingly by an abundant flow of testimony that details the opportunities afforded and rejected over nearly four years.

Lisa Zamborsky, of Wesley Family Services[,] was contacted in February 2018 to supervise two hour visits twice monthly. [Father] told her he was unable to attend because he was "on bond, and needed to straighten out some legal issues." The contact remained open, but visits never occurred.

Rachel Graham, LSW, of King and Associates, is a specialist in assessing parenting styles, etc., things such as appropriateness, interactions, boundaries, developmental levels and activities, etc.; she found that the [C]hildren do not mention or react to [Father] with any degree of emotion.

Ms. Graham also assessed [Mother]. She noted that the [C]hildren would say no to hugs and kisses, and separated without hesitation, even when [Mother] had "excessively pushed for affection." In contrast, their reaction to [Foster Mother] was effusive and warm. She opined that the [C]hildren would not be harmed developmentally by a termination. Moreover, she recommended an ending of supervised visits, believing that [Mother] lacked stability, and was impervious to the safety risk of continually exposing the [C]hildren to chaos and domestic violence. (During this time[,] [Mother] secretly continued her relationship with [Q.M., her paramour], even though he was violent and abusive. Moreover, she was untruthful and manipulative in her reporting, once taking [a] child into the bathroom during a supervised visit to have them speak with [Father] [on her phone], in violation of the rules of parent-child supervised visits).

Alexis Jacomen, a therapist of longstanding with King and Associates, was involved with the parents and both children from September of 2014 until June 2018. The [C]hildren, in her observation, have progressed significantly, but in the near total absence of the birth parents.

Tara Lorenzo, caseworker for the Westmoreland County Children's Bureau, was assigned to this case two years ago. She related [Mother's] history of domestic violence victimization, mental health issues and treatment, and lack of participation in treatment and services. Currently, [Mother] does not have her own housing because she has refused to separate herself from [Q.M.], who is abusive.

Amanda Davis of Westmoreland Case Management [sic] has been the mother's case manager since October 2017. She testifies as to a great improvement by [Mother], and progress in dealing with her personal issues – a bipolar

personality disorder, depression, and alcohol abuse. However, [Mother's] belated progress is not a basis to dismiss the petition. Further, efforts to reunify her would be harmful to the wellbeing of the [C]hildren.

[Ms. Lorenzo] notes, as to [Father], his failure to complete mental health services while on parole, his arguing with providers, his failure to obtain employment and housing, and his refusal to seek visits or have any participation in the lives of the [C]hildren outside of a few visits. (He has clearly "offloaded" the care of his children to others; fortunately for these children, the foster parents have tended to every issue of each child.) After about four years, neither parent has demonstrated any basis on which the [C]hildren should be returned; to the contrary, it is clear that the parents' rights should be terminated.

The grounds set forth in 23 Pa.C.S.A. § 2511 are clearly established by clear and convincing evidence, and adoption is clearly in the best interests of these children.

This memorandum is just an amplification of findings and conclusions announced in court at the conclusion of the Termination of Parental Rights hearing.

Trial Court Opinion, 9/28/18, at 1-5.

After careful review, we find that competent, clear and convincing evidence in the record supports the trial court's conclusion that the Children have been removed from Father and Mother's care for at least twelve months and that the conditions which led to the removal of the Children still exist. In re C.L.G., 956 A.2d at 1005. Furthermore, the evidence of record supports

the trial court's determination that termination of the parental rights would best serve the needs and welfare of the Children.[4]  Id.

Moreover, when the trial court considered Section 2511(b), it determined that termination of Father's and Mother's parental rights would serve the Children's best interests and that there is no bond between the Children and Father and Mother, which if broken, would cause detriment to the Children.  Its conclusion is supported by clear, convincing, and competent evidence in the record.  In re: T.S.M., 71 A.3d at 267.  Thus, we find no abuse of discretion in the trial court's termination of Father's and Mother's parental rights to the Children pursuant to Sections 2511(a)(8), and (b).  Id. We, therefore, affirm the termination orders.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2019

_____

[4] Attorney Eshelman, counsel for the Children, stated on the record at the end of the termination hearing that she interviewed the Children and that both children indicated they wanted to be adopted by Foster Mother.  N.T., 6/13/18, at 192-193.  Further, Attorney Murphy, GAL for both children, stated that it was her opinion that it was in the best interest of the Children to terminate Father's and Mother's parental rights.  Id. at 193-194.